# UNITED STATES DISTRICT COURT
## District of Kansas
(Wichita Docket)

UNITED STATES OF AMERICA,

       Plaintiff,

     v.                           CASE NO.  25-10148-EFM

CHARLES E. COLBERT, JR.,

       Defendant.

---

## UNITED STATES' NOTICE OF ANTICIPATED EXPERT WITNESS TESTIMONY

---

The United States, by and through undersigned counsel, provides the following supplemental notice of expert testimony, pursuant to Federal Rules of Criminal Procedure 16(a)(1)(E) and (G) and Fed. R. Evid. 702, 703, and 705, which the government intends to present in its case-in-chief at trial. The United States respectfully reserves the right to offer additional testimony by these experts, or other expert witness(es), and for the experts to amend or adjust their opinion and bases for those opinions due to information made known to the experts before or during trial.

Notwithstanding the foregoing, the United States respectfully reserves its right to supplement this Notice with any additional expert witnesses that, although unknown and hence unidentified at this time, may later become essential to its case in chief if and when additional facts not presently known come to light.

The government requests full disclosure of all information required pursuant to Federal Rules of Criminal Procedure 16(b) no later than ten days from the filing of this notice.

## **Expert Witnesses**

1. **Andrew M. Waller, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)**

The United States intends to call Andrew Waller, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) as an expert witness at trial regarding the manufacturing location and interstate nexus of the firearm at issue in this case. Specifically, SA Waller will testify regarding the nexus of the firearm, the manufacturing location of a Glock, with unknown model containing a Glock, model 19X slide displaying serial number CCLC342, 9mm caliber machinegun with serial number CABY510, and if that firearm in fact traveled in interstate commerce before coming to the District of Kansas.

a.      **Opinion:** SA Waller will state that the firearm detailed in his report is a firearm under Title 18, United States Code, Chapter 44, Section 921(a)(3), and that it was manufactured outside the State of Kansas and traveled in interstate and/or foreign

commerce before it came to Kansas. These opinions are attached to this Notice and provided to the defendant in discovery.

b.      **Basis and Reasons for the Opinion:**   SA Waller's opinions have been formulated from a combination of his professional experience and training. SA Waller's expert report, previously provided to the parties through discovery and attached to this disclosure and incorporated herein also contains the basis for his opinions. The report is signed by SA Waller and contains "all the opinions and the bases and reasons for them required by [Fed.R.Crim.P. 16(a)(1)(G)] (iii)." As such, the government asserts that SA Waller is not required to sign this notice pursuant to Fed.R.Crim.P. 16(a)(1)(G)(v).

c.      **Qualifications/ Previous Publications:**   SA Waller's qualifications are listed out in his "Court Qualification Statement" which attached to this disclosure and incorporated herein. He has not published any prior papers, articles, or documents in relation to the nexus of firearms.

d.      **Prior Expert Testimony**: SA Waller testified as an expert witness in August 2024 - US v. Ryan Vangdy, 23-10027- 01-JWB.

2. **Andrew Griffith, Firearms Enforcement Officer, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)**

The United States intends to call Andrew Griffith, Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) as an expert witness at trial regarding examination, test and classification of the firearm at issue in this case as a machine gun. Specifically, Griffith will testify regarding the definition of firearms and machine guns under federal law, machine gun conversion devices and how

3

they function to turn a weapon into a machine gun, and the determination that the Glock, model 19X, 9x19mm caliber firearm with serial number CABY510 had a conversion device that enabled automatic fire thus converting the weapon into a machine gun.

a.      **Opinion:**  Griffith will state that the firearm with the conversion device detailed in his report is a firearm and machine gun under Title 18, United States Code, Sections 921(a)(3) and 921(a)(24) and Title 26, United State Code, Sections 5845(a) and 5845(b). These opinions are detailed further in the expert report attached to this Notice and provided to the defendant in discovery and are incorporated herein. Griffith will testify that the conversion device in the firearm at issue allowed for the switch between automatic and semiautomatic operation of the firearm.

b.      **Basis and Reasons for the Opinion:** Griffith's opinions have been formulated from a combination of his professional experience and training. Griffith's expert report, previously provided to the parties through discovery and attached to this disclosure and incorporated herein also contains the basis for his opinions. The report is signed by Griffith and contains "all the opinions and the bases and reasons for them required by [Fed.R.Crim.P. 16(a)(1)(G)] (iii)." As such, the government asserts that Griffith is not required to sign this notice pursuant to Fed.R.Crim.P. 16(a)(1)(G)(v).

c.      **Qualifications/ Previous Publications:**  Griffith's qualifications are listed out in his "Curriculum Vitae" which attached to this disclosure and incorporated herein. He has not published any prior papers, articles, or documents in relation to machine gun examination.

**d.** **Prior Expert Testimony**: Griffith has testified as an expert previously and those matters are listed out in his CV which is attached to this disclosure and incorporated herein.

3. **Sara M. Rogers, Forensic Scientist, Sedgwick County Regional Forensic Science Center (SCRFSC)**

The United States intends to call Sara Rogers, Forensic Scientist with Sedgwick County Regional Forensic Science Center (SCRFSC) as an expert witness at trial regarding comparison between firearms and expended casings. Ms. Rogers is an expert in the field of firearm examinations. She will testify to the accreditation of the SCRFSC and its adherence to industry standards. Ms. Rogers will discuss the training and certifications required to be qualified to examine firearms. Specifically, Ms. Rogers will testify regarding her examination of the various items of evidence she was provided by Wichita Police Department, to include, among many things, multiple cartridge cases collected from an investigation at the American Legion and an independent drive by shooting. Ms. Rogers will discuss the techniques and industry standards used to examine and compare cartridge casings/cases to specific firearms as laid out in her reports with laboratory case #25-00590 #3 and #25-00590 #5, provided in discovery and attached hereto and incorporated herein.

**a.** **Opinion:** At trial, Ms. Rogers will provide general background information regarding the techniques involved in firearm comparison and will discuss, for example, the unique markings associated with firearms and how those markings are transferred to casings when fired from a firearm. She will testify as to what discernable

class and individual characteristics are, how they are identified during an examination and how they are utilized in her ultimate determination. Ms. Rogers will explain the process in which function testing is completed. Ms. Rogers will testify how the evidence was received and processed at the laboratory and how the evidence is tested.

Ms. Rogers will provide her expert opinion that from the various cartridge casings/cases provided by the Wichita Police Department, she was able to determine that certain cartridges casings/cases were fired from the same firearm while others were excluded from being fired from the firearm. Ms. Rogers will also provide her expert opinion when given a certain firearm to compare to, she was able to determine specific firearms fired specific cartridge casings/cases collected and provided for analysis by the Wichita Police Department. Ms. Rogers will describe the process in which she examines firearms and cartridge casings/cases and the process in which she determines a certain firearm fires a specific cartridge casing/case.

Ms. Rogers will testify that the result of her examination indicates that the 9mm Luger caliber Glock model 19X semiautomatic frame bearing serial number CABY510, slide bearing serial number CCLC342 and attached machinegun conversion device with (item 10) was not functional due to damage to trigger area. However, Ms. Rogers will testify that after replacing the frame and slide cover plate, with similar parts, the firearm was functional. Ms. Rogers was able to determine that two (2) of the cartridge/cases she was provided to examine were fired from the same firearm and that firearm was the Glock (item 10).

b.        **Basis and Reasons for the Opinion:**   Ms. Rogers' opinions have been formulated from a combination of her professional experience and training. Ms. Rogers' expert reports, previously provided to the parties through discovery and attached to this disclosure and incorporated herein also contains the basis for her opinions. The report is signed by Ms. Rogers and contains "all the opinions and the bases and reasons for them required by [Fed.R.Crim.P. 16(a)(1)(G)] (iii)." As such, the government asserts that Ms. Rogers is not required to sign this notice pursuant to Fed.R.Crim.P. 16(a)(1)(G)(v).

c.        **Qualifications/ Previous Publications:**   Ms. Rogers' qualifications and prior publications are listed out in her CV which attached to this disclosure and incorporated herein

d.        **Prior Expert Testimony**: Ms. Rogers has testified as an expert previously and those matters are listed out in her CV which is attached to this disclosure and incorporated herein.

4.    **Therese Gibler, Forensic Scientist, Sedgwick County Regional Forensic Science Center (SCRFSC)**

The United States intends to call Therese Gibler, Forensic Scientist with Sedgwick County Regional Forensic Science Center (SCRFSC) as an expert witness at trial regarding DNA located on the Glock firearm at issue. Ms. Gibler is an expert in the field of forensic DNA analysis. She will testify to the accreditation of the SCRFSC facilities and its adherence to industry standards. Ms. Gibler will discuss the extensive training she was required to complete to be qualified as a forensic examiner. Specifically, Ms. Gibler will testify regarding her examination of the DNA swabs taken from the Glock firearm at

issue and DNA oral standard taken from Charles Colbert that were provided by Wichita Police Department and detailed in her reports with laboratory case #25-00590 #1 and #6, provided in discovery and attached to this disclosure and incorporated herein.

  **a.**  **Opinion:** At trial, Ms. Gibler will provide general background information regarding forensic DNA testing and will describe/define deoxyribonucleic acid (DNA), how DNA varies from person to person, how DNA may transfer from its original source to another person or object, what factors may affect the quality and or quantity of DNA detected and what constitutes a comparable value. Ms. Gibler will testify how the evidence is received and processed at the laboratory, how the evidence is tested and how the results are recorded and verified.

  Ms. Gibler will provide her expert opinion that from the sample(s) submitted to her for analysis, DNA profiles suitable for analysis were recovered from the swabs labeled "slide grips bullet" of the Glock firearm at issue in this case. Ms. Gibler will describe the process used to recover those profiles, which includes, but is not limited to, collection, extraction, quantitation, amplification, analysis and interpretation. This will also include describing the individualizing characteristics used to conduct DNA analysis, DNA typing and the possible outcomes of a DNA examination and the comparison of profiles recovered from items to known profiles. Ms. Gibler will also explain how a DNA profile is interpreted, what factors may affect interpretation, and the process for determining the number of contributors to an evidentiary profile. Ms. Gibler will explain the difference of major and minor contributors and how that is determined through

interpretation. Ms. Gibler will also explain the statistical calculation that provides context for the discriminating power of the evidence profiles obtained.

Ms. Gibler will testify that the result of her analysis indicates DNA of at least two individuals, was detected in the swabs from the Glock.  The major contributor of DNA from these swabs is consistent with the profile of Charles Colbert thus he cannot be excluded as the major contributor. She will testify that the probability of selecting an unrelated individual at random who exhibits a profile that is the potential major contributor to the profile obtained is approximately 1 in 434 octillion.

Ms. Gibler will testify that the result of her analysis indicates that other identified individuals, Darius Jackon and Daquinton Baker are excluded as major contributors of the DNA profile on the Glock firearm.

**b.      Basis and Reasons for the Opinion:**   Ms. Gibler's opinions have been formulated from a combination of her professional experience and training. Ms. Gibler's expert report, previously provided to the parties through discovery and attached to this disclosure and incorporated herein also contains the basis for her opinions. The report is signed by Ms. Gibler and contains "all the opinions and the bases and reasons for them required by [Fed.R.Crim.P. 16(a)(1)(G)] (iii)." As such, the government asserts that Ms. Gibler is not required to sign this notice pursuant to Fed.R.Crim.P. 16(a)(1)(G)(v).

**c.      Qualifications/ Previous Publications:**   Ms. Gibler's qualifications and prior publications are listed out in her CV which is attached to this disclosure and incorporated herein

**d.**    **Prior Expert Testimony**: Ms. Gibler's prior testimony as an expert are listed out in the attached Court Testimony Log which attached to this disclosure and incorporated herein.

Notwithstanding the foregoing, the United States reserves its right to supplement this *Notice* with any additional expert witnesses that, although unknown and hence unidentified at this time, may later become essential to its case in chief if and when additional facts not presently known come to light.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

s/ Katherine J. Andrusak
KATHERINE J. ANDRUSAK
Special Assistant U.S. Attorney
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
Telephone: (316) 269-6481
Fax: (316) 269-6484
K.S.Ct.No. 25961
E-mail: katie.andrusak@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

s/ Katherine J. Andrusak
KATHERINE J. ANDRUSAK,
Special Assistant U.S. Attorney

10

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: COLBERT Jr., Charles - WFIG | Investigation Number: 25-22109 | Report Number: 5 |
|---|---|---|

## SUMMARY OF EVENT:

On December 30, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) A. Waller examined one (1) firearm to determine its status as to travel in interstate and/or foreign commerce regarding alleged crimes having been committed by Charles COLBERT.

## NARRATIVE:

1. On December 30, 2025, SA Waller examined the following firearm and its markings under 27 CFR, Section 478.92, which include but are not limited to the serial number, name of the manufacturer, model, caliber or gauge, and also, when applicable, the importer.  The firearm is described as follows:

   - Item 01: Glock, Model Unknown (Original slide replaced with Glock Model 19X slide displaying serial number CCLC342), 9mm caliber machinegun with serial number (CABY510) and importer markings of Glock, Inc., Smyrna, GA.

2. In addition to this examination, this firearm was researched by referencing the Bureau of Alcohol, Tobacco, Firearms and Explosives list of firearm manufacturers, the Blue Book of Gun Values (Forty-Fourth Edition), and Gun Traders Guide (42nd Edition).  These references are widely known and used by both law enforcement and civilian experts to obtain information about firearms and their respective manufacturers, including the place of manufacture and other matters of interest related to firearms.  They are routinely relied upon to determine the place of manufacture of firearms.

## FINDINGS:

3. Based upon the physical evidence on the firearm, in conjunction with the research, knowledge and experience of the SA, it is in his opinion that:

   - Glock GMBH manufactured Item 01 in the country of Austria, then imported into the United States by Glock Inc., located in the state of Georgia.

| Prepared by: 5385 | Title: Special Agent | Signature: 5385 | Date: 01/08/2026 |
|---|---|---|---|
| Authorized by: 4517 | Title: RAC | Signature: 4517 | Date: 01/08/2026 |
| Second level reviewer (optional): | Title: | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation:<br>COLBERT Jr., Charles - WFIG | Investigation Number:<br>25-22109 | Report Number:<br>5 |
| --- | --- | --- |

4.  A test firing of Item 01 was not conducted.

**CONCLUSION:**

5.  Item 01 is a firearm as defined in Title 18, United States Code (USC), Chapter 44, Section 921(a)(3) and was not manufactured in the state of Kansas.

**OPINIONS:**

6.  It is the opinion of the SA that if the firearm was received or possessed in the state of Kansas, the firearm would have travelled in interstate commerce.  It is further the opinion of the SA that Item 01 has traveled in foreign commerce.

**ATTACHMENTS:**

Photographs of one (1) Glock, Model Unknown, 9x19 caliber pistol (CABY510)

ATF EF 3120.2 (10-2004)
For Official Use Only

Court Qualification Statement of

Special Agent Andrew Waller

Bureau of Alcohol, Tobacco, Firearms, and Explosives

Wichita, KS

I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since 2014. I render advice and assistance to law enforcement officers employed by the Federal, State, County and Local police agencies as well as to Special Agents of the ATF concerning the identification, origin, markings, function and history of firearms. In conjunction with these duties, I have been involved in many investigations relating to firearm crimes and have examined numerous firearms and ammunition. I also have been tasked as a vault custodian in charge of maintaining proper chain of custody and ensuring firearms were identified correctly within ATF's case management system at time of entry into the vault.

I prepare reports relating to the identification, origin, and classification of firearms and ammunition under the provisions of federal law.

I have access to the records of all licensed firearm and ammunition manufactures and importers in the United States.

I maintain a collection of books, videos, printed material and documents that relate to the field of firearms and ammunition.

I have a Bachelors of Science degree majoring in Psychology and Sociology from the University of Kansas (2000).

I am a graduate of the Kansas Highway Patrol Academy in Salina, KS. I worked as a State Trooper within Troop F for over eight years.

I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator course in Glynco, GA.

I am a graduate of the ATF Special Agent Basic Training (SABT) course for Special Agents in Glynco, GA.

I have completed ATF's Firearms Interstate Nexus training course.

I have visited and received training at the following firearm manufacturing facilities:

    Daniel Defense Inc – Savannah, Georgia

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms & Ammunition Technology
Division, Field Response Branch
Report of Technical Examination**



**244 Needy Road #1600
Martinsburg, WV 25405**

**Phone: 304-616-4300
Fax: 304-616-4301**

| **To:** | | **CASE#:** | 25-22109 |
|---|---|---|---|
| Task Force Officer Vincent Reel | | **RE:** | Colbert, Charles |
| Bureau of Alcohol, Tobacco, Firearms and Explosives | | | |
| 301 North Main Street, Suite 225 | | **FRB#:** | 2025-883-AGG |
| Wichita, Kansas 67202 | | | 336740A |

| **Date Exhibit Received:** August 08, 2025 | **Type of Examination Requested:** |
|---|---|
| **Delivered By:** FedEx 8833 8870 7730 | Examination, Test, Classification |

*This report is issued as an amendment to the report of the same number dated September 7, 2025. Specifically, this report corrects a spelling error on page 4 of the report and a photograph on page 16 of the attached photographs due to clerical error.*

**Exhibit:**

1.  Glock, model 19X, 9x19mm caliber firearm, serial number CABY510 (suspected machinegun).

**Pertinent Authority:**

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) with the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 C.F.R. § 0.130, the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state, and local law enforcement agencies regarding the Gun Control Act and the National Firearms Act.

The Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as:

"*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*"

The GCA, 18 U.S.C. § 921(a)(24), defines the term "**machinegun**" as:

"*ha[ving] the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. [§] 5845(b)).*"

Task Force Officer Vincent Reel                                            25-22109
                                                                          2025-883-AGG
                                                                          Page 2

The National Firearms Act of 1934 (NFA), 26 U.S.C. § 5845(a), defines the term **"firearm"** as:

*"(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term 'firearm' shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the [Attorney General] finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon."*

The NFA, 26 U.S.C. § 5845(b), defines the term **"machinegun"** as:

*"[A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."*

The NFA, 26 U.S.C. § 5842, states:

*"(a) Identification of firearms other than destructive devices.--Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the [Attorney General] may by regulations prescribe. (b) Firearms without serial number.--Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the [Attorney General] and any other information the [Attorney General] may by regulations prescribe."*

## **Findings:**

As background, Glock-type machinegun conversion devices are encountered in a variety of configurations, to include both one-piece ("chip") and multi-part ("switch") devices. The switch-type version consists of three main parts: a housing which replaces the slide cover plate in a Glock-type pistol, a leg which interacts with the trigger bar of the host pistol, and a push-button selector switch which serves as a retaining rod. The push-button selector switch is designed to allow the operator to select either semiautomatic or automatic fire depending on the position of the switch. Frequently, the push-button selector on these conversion devices malfunctions, causing the host firearm to fire automatically regardless of the position of the switch. Hand fitting is often required when installing a switch to ensure functionality.

    A.  Cycle of Operations in a Standard Semiautomatic Glock-type Firearm

In a standard semiautomatic Glock-type firearm, the trigger is the curved plastic lever. Engaging the trigger rearward activates the firing mechanism which results in the firing of the chambered cartridge.

Task Force Officer Vincent Reel

25-22109
2025-883-AGG
Page 3

Prior to engaging the trigger, the firing pin is retained in a partially retracted position by the firing pin lug which is held by the rear of the cruciform located on the trigger bar (pages 1 – 2 Figures 1 and 2).

Engaging the trigger rearward causes the trigger bar to move rearward which both disengages the firing pin safety and further retracts the spring-loaded firing pin. The trigger bar moves rearward, it moves off the safety shelf and contacts a surface on the connector, which forces the trigger bar (and its integral cruciform) downward and rearward (page 2 Figure 3). As it moves downward, the cruciform separates from the firing pin lug, which releases the spring-tensioned firing pin discharging the chambered cartridge (page 3 Figure 4).

The energy generated by the fired cartridge causes the slide to move rearward which pushes the connector to the side releasing the trigger bar allowing the cruciform to rise. Further, the slide moving rearward causes the spent cartridge case to be extracted from the chamber and ejected from the firearm (page 3 Figure 5).

As the slide returns to its forward position, a round is chambered from the firearm's magazine and the firing pin is once again retained in a rearward position by the cruciform (page 4 Figures 6 and 7).

To fire another shot, the shooter must first release the trigger allowing the trigger bar to move forward so that the connector can return to its original position and then pull the trigger to the rear for each subsequent shot (page 5 Figure 8).

   B.  How a Machinegun Conversion Device Changes the Cycle of Operations in a Glock-type Firearm to Allow the Firearm to Shoot Automatically

By contrast, in a Glock-type firearm equipped with a machinegun conversion device, a single engagement of the trigger results in more than one round being discharged automatically (page 6 Figure 9).

After a shot is discharged and the slide moves rearward, ejecting a cartridge case (page 7 Figure 10).  As it returns to its forward position loading a cartridge, the cruciform only momentarily holds the firing pin to the rear compressing the firing pin spring (page 7 Figure 11).

As the slide moves forward, the leg of the device pushes down on the cruciform releasing the spring tensioned firing pin (page 8 Figure 12). This causes another shot to discharge automatically without the need to reset the trigger.

The dimensions of these legs are not standard across different conversion devices.  To function, the leg must be long enough to push down on the cruciform just after the cruciform retracts the firing pin. This interaction occurs in fractions of a second during the operating cycle of the firearm. The only purpose of the leg is to push the cruciform down, thus removing the cruciform's function of retaining the firing pin in a rearward position after each individual trigger pull. Because the firing pin is not retained in the rearward position, the firearm will continue to fire until the ammunition in the magazine is exhausted, the shooter releases the trigger, or the weapon malfunctions. A shooter need only engage the trigger once to activate the automatic firing sequence.

Task Force Officer Vincent Reel

25-22109
2025-883-AGG
Page 4

**Exhibit 1** is a 9x19mm caliber firearm made utilizing a frame manufactured for a model 23 semiautomatic pistol by Glock, GmbH, in Austria, subsequently imported by Glock, Incorporated, in Smyrna, Georgia (see page 9 of attached photographs). As received, the original model 23 slide and barrel assembly have been replaced with a Glock model 19X slide assembly and an L2D aftermarket 9x19mm caliber barrel.

As received, Exhibit 1 is equipped with a modified slide cover plate, hereafter referred to as **Exhibit 1A** and described below (see page 12 of attached photographs). Further, Exhibit 1 was received with damage. A partial bullet core and its jacket are lodged in the trigger guard and trigger area of the firearm, rendering Exhibit 1 inoperable and unsafe to fire (see page 11 of attached photographs).

During my examination, I observed the following external markings (see page 10 of attached photographs):

On the forward, underside area of the frame

- **CABY510** *[serial number]*

On the right side of the frame

- **MADE IN AUSTRIA**
- **GLOCK, INC., SMYRNA, GA.**
- **U.S. Pat. 8,156,677**

On the left side of the frame

- ⌊lOCK⌋

On the left side of the slide

- ⌊lOCK⌋ **19X AUSTRIA 9x19**

On the right side of the slide

- ⌊lOCK⌋ **CCLC342**

On the right side of the barrel

-

On the top of the barrel

- **9MM**

Task Force Officer Vincent Reel

25-22109
2025-883-AGG
Page 5

**Exhibit 1A** is a combination of parts designed and intended to convert a semiautomatic Glock-type firearm into a machinegun (see page 13 of attached photographs).

Exhibit 1A has the same design features as known Glock-type machinegun conversion devices. Specifically, Exhibit 1A incorporates a housing that is designed to replace the polymer slide cover plate of a Glock-type firearm and has connected to the housing an extended leg (see page 17 of attached photographs). The leg is designed and intended to automatically push the trigger bar down and out of engagement with the firing pin as the slide closes, thus releasing the partially retracted firing pin discharging a round.

Further, Exhibit 1A is substantially the same as the device detailed in U.S. Patent 5,705,763, which is a patent that was issued on January 6, 1998, for a "fire selector system" to switch between automatic and semiautomatic operation on a Glock-type firearm (see page 14 of attached photographs). The device consists of a housing designed to replace the polymer slide cover plate of a Glock-type firearm, a selector switch, and a leg.

During my examination, I observed the following external markings on Exhibit 1A (see page 13 of attached photographs):

-

*Note: Although Exhibit 1A bears a counterfeit Glock logo and is designed for use with a Glock pistol, neither Glock GmbH of Austria, nor Glock, Inc., in Smyrna, Georgia, have ever manufactured such a device.*

As Exhibit 1 is damaged and unsafe to fire, I installed Exhibit 1A on a Glock, model 22 pistol obtained from the National Firearms Collection (NFC) (see page 18 of attached photographs). I performed a function test of the NFC pistol with Exhibit 1A installed. The NFC pistol, with Exhibit 1A installed, functions as a machinegun.

In order to demonstrate that Exhibit 1A is a combination of parts designed and intended, for use in converting a weapon into a machinegun, I test fired the NFC pistol, with Exhibit 1A installed, on September 02, 2025, at the ATF test range, in Martinsburg, West Virginia, using commercially available, Speer brand, .40 S&W caliber ammunition and a magazine retrieved from the NFC. I inserted the magazine with one round of ammunition, chambered the round, and pulled the trigger. The NFC pistol, with Exhibit 1A installed, expelled a projectile by the action of an explosive.

Next, I inserted the magazine with two rounds of ammunition, chambered the first round, and pulled the trigger. The NFC pistol, with Exhibit 1A installed, fired both rounds automatically, without manual reloading, by a single function of the trigger. Lastly, I inserted the magazine with five rounds of ammunition, chambered the first round, and pulled the trigger. The NFC pistol, with Exhibit 1A installed, fired all five rounds automatically, without manual reloading, by a single function of the trigger. I repeated this method of test-fire two additional times achieving the same result.

Task Force Officer Vincent Reel

25-22109
2025-883-AGG
Page 6

Exhibit 1A successfully installed on the NFC pistol and converted it into a machinegun. With Exhibit 1A installed, the NFC pistol will shoot automatically more than one shot, without manual reloading, by a single function of the trigger. A single engagement of the trigger will result in the firearm discharging rounds until the ammunition is exhausted, a malfunction occurs, or the trigger is released. Exhibit 1A incorporates all the objective design features of known switch-type conversion devices. Further, Exhibit 1A is substantially consistent with the known conversion device detailed in U.S. Patent 5,705,763.

**Conclusions:**

**Exhibit 1** is a weapon which is designed to expel a projectile by the action of an explosive; therefore, Exhibit 1 is a "**firearm**" as defined in 18 U.S.C. § 921(a)(3)(A).

Because the sole purpose of this device is to enable automatic fire by preventing the cruciform from retaining the firing pin, **Exhibit 1A** is a combination of parts designed and intended for use in converting a weapon into a machinegun; therefore, Exhibit 1A is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

Exhibit 1A, being a machinegun, is also a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).

Exhibit 1A is also a "**machinegun**" as defined in 18 U.S.C. § 921(a)(24).

Exhibit 1A bears no NFA manufacturer's markings of identification or serial number as required by 26 U.S.C. § 5842.

Task Force Officer Vincent Reel                                                     25-22109
                                                                                    2025-883-AGG
                                                                                    Page 7

Examined by:


_____
Andrew Griffith
Firearms Enforcement Officer
Field Response Branch – Central


Approved by:


_____
*for* John W. Miller
Firearms Enforcement Officer, Acting Chief
Field Response Branch – Central

Attachment: 18 pages bearing photographs and (copy) U.S. Patent 5,705,763.

**This Field Response Branch report is provided in response to your request for assistance. Please be aware that these documents may constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103. Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. §§ 6103(h)(2)(C) and (o)(1). Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**

25-22109
2025-883-AGG
Page 1 of 18

Figure 1





Figure 2

Figure 3

Figure 4



Cruciform drops to release
striker/firing pin lug

Figure 5

Shot Fired, Slide Moves
Backward, Ejecting Casing

25-22109
2025-883-AGG
Page 4 of 18

Figure 6

Slide Moves Forward,
Loading Cartridge



Figure 7



Cruciform returns to
original position to retain
striker/firing pin lug

25-22109
2025-883-AGG
Page 5 of 18

Figure 8

The shooter may now
release and reengage the
trigger to fire another round





Figure 9



Figure 10

Shot fired, Slide moves rearward



Figure 11

Slide moves forward, loads cartridge

Trigger continuously engaged

25-22109
2025-883-AGG
Page 8 of 18



Leg contacts and pushed down cruciform as slide moves forward, discharging another projectile



Figure 12

# Exhibit 1





# Exhibit 1 markings



Serial number













# Exhibit 1 Damage



Missing magazine release and portion of trigger



Bullet embedded in trigger guard

25-22109
2025-883-AGG
Page 12 of 18

# Exhibit 1 with Exhibit 1A installed, as received




25-22109
2025-883-AGG
Page 13 of 18

# **Exhibit 1A**









25-22109
2025-883-AGG
Page 14 of 18

# Exhibit 1A



FIG. 3b

25-22109
2025-883-AGG
Page 15 of 18

## Exhibit 1A compared with factory Glock-type slide cover plate





25-22109
2025-883-AGG
Page 16 of 18

# Exhibit 1A installed on NFC Glock-type slide  compared with factory Glock-type slide and slide cover plate



Exhibit 1A and NFC slide

25-22109
2025-883-AGG
Page 17 of 18

# **Exhibit 1A**



Housing/body

Selector/retaining rod

Leg



25-22109
2025-883-AGG
Page 18 of 18

## <u>Exhibit 1A installed on NFC Glock pistol</u>




US005705763A

# United States Patent [19]

## Leon

[11] **Patent Number:** 5,705,763

[45] **Date of Patent:** Jan. 6, 1998

[54] **FIRE SELECTOR SYSTEM FOR SELECTING BETWEEN AUTOMATIC AND SEMI-AUTOMATIC OPERATION OF A GUN**

[76] Inventor: **Jorge A. Leon**, Av. Macuto, Res. Macaracuay, Apto. #4B, Macaracuay Caracas, Venezuela

[21] Appl. No.: **685,184**

[22] Filed: **Jul. 18, 1996**

[51] **Int. Cl.$^6$** ................................................. **F41A 19/33**
[52] **U.S. Cl.** ................................................. **89/140**; 89/128
[58] **Field of Search** ............................. 89/140, 141, 142, 89/128

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,216,412 | 10/1940 | Holek | 89/142 |
| 2,432,486 | 12/1947 | Patchett | 89/142 |
| 2,572,872 | 10/1951 | Ketterer | 89/140 |
| 2,718,818 | 9/1955 | Cuppini et al. | 89/142 |
| 2,909,100 | 10/1959 | Kennerley-Tayler | 89/140 |
| 3,012,479 | 12/1961 | Ruffell | 89/142 |
| 3,021,763 | 2/1962 | Beretta | 89/140 |
| 3,358,560 | 12/1967 | Ruffell | 89/142 |
| 4,539,889 | 9/1985 | Clock | 89/147 |
| 5,355,768 | 10/1994 | Felk | 89/147 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1148550 | 12/1957 | France | 89/140 |

### OTHER PUBLICATIONS

Wooldridge, J. "The Enforcer," Popular Mechanics, Sep., 1991 pp. 39–42.

*Primary Examiner*—Stephen M. Johnson
*Attorney, Agent, or Firm*—Heslin & Rothenberg, P.C.

[57] **ABSTRACT**

A fire selector system for selecting between automatic and semi-automatic operation of a gun is provided. The system is mountable on a reciprocating slide of the gun and into operative relationship with the trigger bar of the gun. A member of the selector system is movable between forward and rearward longitudinal positions. The forward longitudinal position allows the member to assume an activating longitudinal position for automatic operation of the gun. The rearward longitudinal position prevents the member from assuming its activating longitudinal position, thereby effecting semi-automatic operation of the gun. The member repetitively contacts a contact area of the trigger bar as it reciprocates with a reciprocating slide of the gun during automatic operation. Further, the device is easily installed and removed from the reciprocating slide depending on user requirements.

**7 Claims, 6 Drawing Sheets**





*FIG. 1a*



FIG. 1b

FIG. 1c

FIG. 1d



*FIG. 2*



FIG. 3b

FIG. 3a



FIG. 4b



FIG. 4a



FIG. 5a

FIG. 5b

FIG. 5c

5,705,763

# 1

## FIRE SELECTOR SYSTEM FOR SELECTING BETWEEN AUTOMATIC AND SEMI-AUTOMATIC OPERATION OF A GUN

### TECHNICAL FIELD

This invention relates to semi-automatic and automatic firearms. More particularly, this invention is a fire selector system for selectively converting a firearm between semi-automatic and automatic operation.

### BACKGROUND OF THE INVENTION

Many firearms are sold in configurations which provide semi-automatic operation or automatic operation. However, it is often desirable to convert an existing semi-automatic firearm to an automatic firearm, without significant modification thereof.

Having made an initial investment in a semi-automatic firearm, many users are inclined not to make an additional, potentially equal investment in a related firearm which provides automatic operation.

Various mechanisms have been proposed in the prior art for effecting selection between semi-automatic and automatic operation. For example, U.S. Pat. No. 3,012,479 to L. E. Ruffell discloses an abutment opposite a recess in a sear, and movable between three positions for safe, semi-automatic, and automatic operation. However, this device does not appear to convert an existing semi-automatic gun to automatic operation. U.S. Pat. No. 2,572,872 to S. J. Ketterer discloses an attachment for converting a semi-automatic rifle to full automatic, but which is dependent on pivoting motion of a lever, triggered by forward movement of a bolt. An arm of the lever thereby rotates a sear into a hammer releasing position to effect automatic operation. This pivoting action of the retrofitted attachment requires significant, independent movement of the attachment itself during automatic operation, which is undesirable as it may lead to failures, mis-fires, etc. Further, cuts to the stock of the rifle are necessary to install the attachment.

Thus, what is required is a simple device for converting a semi-automatic firearm into an automatic firearm. It is preferable that such a device have few moving parts, be easily installed and removed from the existing semi-automatic firearm, operate in a simple manner, and be inexpensive.

### SUMMARY OF THE INVENTION

The shortcomings of the prior art are overcome by the present invention, which in one aspect is a device for converting a semi-automatic gun into an automatic gun. The gun has a trigger bar, a reciprocating slide, and a longitudinal firing mechanism. The trigger bar is normally mounted below the firing mechanism and is movable into a first position in which the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation. Semi-automatic operation is thus effected by this engagement. The converting device includes a member mountable on the reciprocating slide of the gun and into operative relationship with the trigger bar of the gun. The member is movable into an activating longitudinal position in which contact between the member and a contact area of the trigger bar occurs to urge the trigger bar away from its first position following trigger activation. Automatic operation of the gun is thus effected by this contact.

The member may be reciprocatable by a user between forward and rearward longitudinal positions. The forward

# 2

longitudinal position allows the member to assume its activating longitudinal position for automatic operation of the gun. The rearward longitudinal position prevents the member from assuming its activating longitudinal position and thereby allows the trigger bar to assume and retain its first position following trigger activation thus effecting semi-automatic operation.

The device may include a switch for longitudinally moving the member between its forward and rearward longitudinal positions.

The device reciprocates with the reciprocating slide upon its mounting thereon, and, when in its forward longitudinal position, can assume its activating longitudinal position and repetitively contact the contact area of the trigger bar during its reciprocation with the reciprocating slide. The member does not assume its activating longitudinal position and is thus isolated from the contact area of the trigger bar during its reciprocation when the member is in its rearward longitudinal position.

The member may include a tapered tip for contacting the contact area of the trigger bar, the tapered tip gradually urging the trigger bar away from its first position as the member is moved into its activating longitudinal position.

As set forth in greater detail hereinbelow, the fire selector system of the present invention can be easily installed and removed from an existing semi-automatic firearm, thus providing the option of a convertible gun or a non-convertible gun. Further, the fire selector system has very few moving parts, operates in a simple manner and is relatively inexpensive to fabricate.

### BRIEF DESCRIPTION OF DRAWINGS

The subject matter which is regarded as the invention is particularly pointed out and distinctly claimed in the concluding portion of the specification. The invention, however, both as to organization and method of practice, together with further objects and advantages thereof, may best be understood by reference to the following detailed description of the preferred embodiment(s) and the accompanying drawings in which:

FIG. 1a depicts a partial cross-section of an exemplary gun having the fire selector system of the present invention mounted therein, the gun being cocked and ready to fire a single round, the fire selector system being set for semi-automatic operation;

FIG. 1b depicts a position of the components of the gun of FIG. 1a at a point during a trigger activation;

FIG. 1c depicts the gun having the fire selector system therein, the fire selector system being set for automatic operation, the components shown at a point following trigger activation and during forward movement of the reciprocating slide;

FIG. 1d depicts the moment of firing of the gun of FIG. 1c;

FIG. 2 is a perspective view of the trigger bar and fire selector systems of FIGS. 1a–d, and further illustrates the positional relationship therebetween;

FIGS. 3a–b are various views of the fire selector system of the present invention in its extended (automatic) and retracted (semi-automatic) settings, respectively;

FIGS. 4a–b depict an alternate embodiment of the fire selector system in its extended and retracted positions, respectively; and

FIGS. 5a–c are cross-sectional views depicting additional detail of the fire selector system of FIGS. 1–3.

5,705,763

**3**

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT(S)

With reference to FIGS. 1a–d, depicted therein is an exemplary pistol 10 having a fire selector system 100 installed thereon, according to the principles of the present invention. FIGS. 1a–b depict the fire selector system in its setting for semi-automatic operation. FIGS. 1c–d depict the fire selector system in its setting for automatic operation.

As shown in FIG. 1a, the components of the gun 10 relevant to the instant invention are as follows. Trigger 20, shown in its unactivated position, is hingedly connected to a trigger bar 18. A wing 28 of trigger bar 18 is engaging a leg 16 of firing pin 14 (or mechanism). Following backward motion of the trigger, or trigger activation, trigger bar 18 moves rearward and an inclined end 24 thereof contacts an inclined control surface 26 (perpendicular to the page) of a connector 22. As end 24 reaches inclined control surface 26, the trigger bar is pushed downward such that nose 16 is released and, urged by spring 32, firing pin tip 34 will move forward, contact bullet 30, and discharge the same.

Pursuant to the principles of the present invention, a fire selector system 100 is provided on the rear of the slide 12. The system 100 has a housing 106 adapted for mounting on the slide, a switch 104 and a disconnector member 102. Disconnector 102 is movable into either a forward or rearward longitudinal position using switch 104. Disconnector 102 in FIGS. 1a–b is shown in its rearward longitudinal position, for semi-automatic operation. In this position, no interaction will take place between the fire selector system and the trigger bar of the gun. Therefore, as discussed above, normal semi-automatic operation will occur based on the interaction between trigger bar end 24 and control surface 26 upon activation of the trigger.

Such trigger activation is shown in FIG. 1b, wherein the components of the gun are shown at a moment during trigger activation. Wing 28 has pulled leg 16 backward to a point where the end 24 of trigger bar 18 (now obscured by connector 22) is beginning to contact inclined control surface 26. Upon further trigger pull, the control surface 26 will guide trigger bar 18 downward, thereby releasing leg 16 and bolt 14 and firing the gun. As discussed above, the disconnector 102 of fire selector system 100 is generally out of engagement with any of these firing components of the gun during semi-automatic operation. Thus, the gun functions in its normal, semi-automatic operation with disconnector 102 in its rearward longitudinal position. Discharge of the bullet and the subsequent backward motion of the slide 12, and release of the trigger, will effect a re-engagement of wing 28 with leg 16, in preparation for another trigger activation.

FIGS. 1c–d depict automatic operation of the gun, wherein the disconnector 102 of the fire selector system 100 is shown in its forward longitudinal position (i.e., moved a distance 101). FIG. 1c depicts forward motion of the slide following recoil from a previous trigger activation. Inclined surface 116 of the forward tip of the disconnector 102 has been moved a sufficient distance 101 forward such that contact and downward motion of the trigger bar occurs. This contact occurs at a point 19 about 1 or 2 millimeters before the slide 12 reaches its normal forward position. The firing pin 14 is thus released at this point in the reciprocation of the slide and another shot is fired without a trigger activation. Control surface 116 of the disconnector 102 contacts the trigger bar 18 to effect this firing. FIG. 1d depicts the moment of firing at which time the control surface 116 of the disconnector 102 has made contact approximately at a point or contact area 40 of the trigger bar. The longitudinal

**4**

position at which the disconnector begins to engage the trigger bar is referred to herein as the activating longitudinal position.

As long as the trigger is pulled, and ammunition is provided in the clip, the disconnector will repetitively disengage the firing pin by repetitively engaging the trigger bar and repetitive firing will result as the selector system reciprocates with the slide.

FIG. 2 depicts, in perspective form, the relevant components effecting automatic operation including trigger 20, trigger bar 18 and selector system 100. The inclined control surface 116 of disconnector 102 of the selector system 100 is designed to effect contact at about contact area 40 of trigger bar 18, and gradually urge the trigger bar 18 downward as the disconnector moves forward.

FIG. 3a includes side, top and rear views of the fire selector system of the present invention, with the disconnector 102 in its extended (automatic) setting. As discussed above, the components of this system 100 include a disconnector 102, housing 106 and a cylindrical switch 104 running laterally through the housing. A pin 108 can be provided to hold the disconnector 102 in housing 106. Further, the housing 106 may have a flange 112 formed thereon to effect simple installation and removal of this selector system from the gun. FIG. 3b depicts the same views of the selector system with the disconnector in its retracted position, using the opposite switch setting. FIGS. 3a and 3b clearly show that a first switch position effects extension of the disconnector 102 thus effecting automatic operation, and a second switch position effects retraction of the disconnector 102 thus effecting semi-automatic operation.

FIG. 4a includes side, top and rear views of an alternate embodiment 200 of a selector system pursuant to the principles of the present invention, with the disconnector in its extended (automatic) setting. Disconnector 202, housing 206 and pin 208 are similarly provided, however, a thumb switch 204 is provided in this embodiment rather than the cylindrical switch running laterally through the housing set forth in FIG. 3. FIG. 4b depicts the same views of the alternate embodiment 200 of the fire selector system with the disconnector in its retracted (semi-automatic) setting.

FIG. 5a is a sectional, side view of the fire selector system of FIGS. 3a–b, illustrating additional detail of the system. A spring 110 is shown therein which operates to urge the disconnector 102 into a rearward position. Pin 108 is shown positioned through a via 118 of the member 102. The pin is shown in front of the via indicating that the disconnector 102 is in its retracted longitudinal position. An inclined surface 119 of the disconnector 102 facilitates movement of the disconnector 102 between its retracted and extended longitudinal positions, as illustrated in the sectional, top views of FIGS. 5b–c, which also show a cross-section of the laterally positioned switch 104. Switch 104 includes a recess 114 into which disconnector 102 is urged by spring 110 in its retracted position. Further, a small ridge 117 is provided which, as shown in FIG. 5c, holds disconnector 102 in its extended longitudinal position. The inclined surface 119 of the disconnector facilitates movement into the extended position, and the inclined surfaces of ridge 117 similarly facilitate movement from the extended position into the retracted position.

Various dimensions of the fire selector system of FIGS. 5a–c are set forth in the table below.

5,705,763

**5**

| 120 | 54° |
|-----|-----|
| 122 | 21.95 mm |
| 124 | 4.65 mm |
| 126 | 2 mm |
| 128 | 2.45 mm |
| 130 | 2.06 mm |
| 132 | 4.81 mm |
| 134 | 14.7 mm |

An exemplary embodiment of the fire selector system is fabricated using glass filled reinforced polymer for the switch and housing, hardened steel for the disconnector and spring, and carbon steel for the pin.

The above-described selector system therefore has few moving parts, and further is composed of relatively inexpensive parts.

Using the above-described dimensions for the housing and disconnector, a fire selector system is provided to select between semi-automatic and automatic operation of a Glock pistol of the type described in U.S. Pat. No. 4,825,744, hereby incorporated herein by reference in its entirety. The fire selector system of the present invention can be adapted to replace a slide cover plate of that pistol at the rear of the slide, and it can thus be easily installed and removed from the pistol. In its installed position, the fire selector system provides the user with a choice between semi-automatic and automatic operation; and upon its removal, the gun operates in its normal semi-automatic mode.

While the invention has been described in detail herein in accordance with certain preferred embodiments thereof, many modifications and changes therein may be affected by those skilled in the art. Accordingly, it is intended by the following claims to cover all such modifications and changes as fall within the true spirit and scope of the invention.

What is claimed is:

1. A device for converting a semi-automatic gun into an automatic gun, the gun having a trigger bar, a reciprocating slide, and a longitudinal firing mechanism, the trigger bar mounted below the firing mechanism and movable into a first position in which the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation, thereby effecting semi-automatic operation, the device comprising:

   a member mountable on the reciprocating slide of the gun and in operative relationship with the trigger bar of the gun, the member movable into an activating longitudinal position in which contact between the member and a contact area of the trigger bar occurs to urge the trigger bar away from its first position following trigger activation thereby effecting automatic operation of the gun, wherein the member is reciprocatable between forward and rearward longitudinal positions, the forward longitudinal position allowing the member to assume its activating longitudinal position for said automatic operation of the gun, the rearward longitudinal position preventing the member from assuming its activating longitudinal position, thereby allowing the trigger bar to assume and retain its first position following trigger activation to effect said semi-automatic operation of the gun;

   and wherein the device further comprises a user switch coupled for longitudinally moving the member, the user switch having a first position corresponding to the forward longitudinal position of the member and a second position corresponding to the rearward longitudinal position of the member.

**6**

2. The device of claim 1, further comprising a housing in which the member and the user switch are mounted, the housing adapted to be mountable on a rearward portion of the reciprocating slide of the gun with said member extending forward into the reciprocating slide and into the operative relationship with the trigger bar of the gun upon mounting of the housing on the rearward portion of the reciprocating slide.

3. The device of claim 2, wherein the device reciprocates with the reciprocating slide upon its mounting thereon, the member assuming its activating longitudinal position and repetitively contacting the contact area of the trigger bar during its reciprocation with the reciprocating slide when the member is moved into its forward longitudinal position, the member not assuming its activating longitudinal position and being isolated from the contact area of the trigger bar during its reciprocation with the reciprocating slide when the member is moved into its rearward longitudinal position.

4. The device of claim 1, wherein the user switch is elongate and runs laterally through the housing, and wherein the device comprises a spring for urging a rearward end of the member against a side of the user switch, the side of the user switch having a recess, such that:

   in a first lateral switch position comprising said first position, the rearward end of the member is positioned outside of the recess and the member thereby assumes its forward longitudinal position, and

   in a second lateral switch position comprising said second position, the rearward end of the member is urged into the recess and the member thereby assumes its rearward longitudinal position.

5. A device, mountable on a rearward portion of a semi-automatic gun, for selectively converting the gun between semi-automatic and automatic operation, the device comprising:

   a housing adapted to be mountable on the rearward portion of the gun; and

   a member extending from said housing and into the gun upon mounting of the device on the gun, the member movable between an extended longitudinal position and a retracted longitudinal position, wherein

      in the extended longitudinal position a forward end of the member engages a trigger bar of the gun and urges the trigger bar out of engagement with a firing mechanism of the gun following trigger activation thereby effecting said automatic operation, and

      in the retracted longitudinal position, the member is disengaged from the trigger bar of the gun following trigger activation, thereby effecting said semi-automatic operation;

and wherein the device further comprises a switch for moving the member between its extended and retracted longitudinal positions.

6. The device of claim 5, wherein the forward end of the member is tapered, the tapered forward end gradually urging the trigger bar out of engagement with the firing mechanism when the member is in its extended longitudinal position.

7. A gun having a device therein for facilitating selection between semi-automatic and automatic operation of the gun, the gun having a trigger bar and a firing mechanism, the trigger bar being disposed below the firing mechanism and movable into an upper position in which the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation to effect said semi-automatic operation, the device comprising:

   a member for placement in operative relationship with the trigger bar of the gun and moveable by a user between

5,705,763

7

a forward and rearward longitudinal position, the rearward longitudinal position of the member allowing the trigger bar to assume its upper position following trigger activation thereby effecting said semi-automatic operation by allowing engagement between the trigger bar and the firing mechanism, the forward longitudinal position of the member effecting contact between the device and the trigger bar and urging the trigger bar

8

away from its upper position following trigger activation thereby effecting said automatic operation, wherein the device includes a user switch for longitudinally moving the member, the user switch having a first position corresponding to the forward longitudinal position of the member and a second position corresponding to the rearward longitudinal position of the member.

*    *    *    *    *

**Curriculum Vitae**

**Andrew Griffith**

**Bureau of Alcohol, Tobacco, Firearms and Explosives**

**244 Needy Road, Suite 1600**

**Martinsburg, WV 25405**

**Professional Experience:**

Firearms Enforcement Officer (FEO)
January 2023- Present
Firearms and Ammunition Technology Division (FATD)
Bureau of Alcohol, Tobacco, Firearms and Explosives
Martinsburg, West Virginia

- Provides technical information regarding firearms identification, operation, and design for the purpose of assisting the Bureau, the law enforcement community, the firearms industry, and the public in general in the enforcement Federal laws. Specifically, the Gun Control Act of 1968 and the National Firearms Act of 1934.
- Conducts examinations and testing of firearms and related materials submitted as evidence by Federal, State, and local law enforcement agencies.
- Prepares technical reports, official correspondence, and training materials relating to the identification and origin of firearms and their classification under Federal law.
- Evaluates all types of firearms for import classification.
- Determines origin (nexus) and classification of firearms and ammunition.
- Prepares official Bureau responses to written inquiries from the firearms industry and the public.
- Assists in maintaining the Firearms and Ammunition Technology Division reference library, including more than 2,000 books, catalogs, and official correspondence relating to firearms and ammunition.
- Assists in maintaining the ATF National Firearms Reference Collection, including approximately 15,000 firearms.
- Leads tours of the ATF National Firearms Reference Collection to visiting VIPs.
- Assists on search warrants.
- Serves as the firearms technical expert on search warrants and field assists.
- Serves as the FATD Duty Officer on a weekly rotation, answering firearm and ammunition related questions sent to the Division by members of law enforcement, industry members and the general public.
- Performs test-fires and function checks of all types of firearms sent into the division for evaluation and classification.

**Additional Duties Performed:**

- I have completed approximately 105 firearm import evaluations and industry classifications for the Bureau of Alcohol, Tobacco, Firearms and Explosives.
- I have completed approximately 205 criminal reports related to firearms.
- I have completed approximately 1,300 hours of firearms related training for the Bureau of Alcohol, Tobacco, Firearms and Explosives.
- I have performed 6 field assists as a firearm subject matter expert, evaluating recovered firearms confiscated by ATF agents and other members of law enforcement.
- I have served as a firearms and ammunition technical expert at federal and state search warrants.
- I have completed approximately 460 peer reviews of other FEO's firearms evaluation reports.
- I have performed evaluations on approximately 330 machinegun conversion devices for Glock-type firearms and viewed/handled hundreds of machinegun conversion devices for Glock-type firearms.
- I have performed evaluations on approximately 60 AR-type machinegun conversion devices and viewed/handled hundreds of AR-type machinegun conversion devices.
- I have performed evaluations on approximately 75 firearm silencers and have viewed/handled hundreds of silencers.
- I have served as a firearm's technical expert at the ATF "Open House" (Headquarters building, Washington, D.C).
- I have fired approximately 38 various types of machineguns.

**Contract Specialist**

August 2017- August 2020
National Park Service
National Capital Region
Washington D.C

- Regularly researched and purchased ammunition for National Capital Region (NCR) National Parks law enforcement divisions. Also researched and purchased black powder and friction primers for Civil War era cannons.
- Provided research and purchased cannons/carriages and the rehabilitation of cannons/carriages.
- Provided advice to requesting National Parks for ammunition calibers, ammunition types and ammunition manufacturers.
- Served as the liaison between the Federal Law Enforcement Training Center (FLETC), Federal Bureau of Investigation (FBI) and the National Park Service (NPS) when purchasing ammunition through FLETC and the FBI.
- Researched and purchased various ammunition cartridges and gauges to include, but not limited to .223 Remington, 9x19mm, .40 S&W, .45 ACP and 12 gauge. Ammunition types included lethal, non-lethal and frangible. Also advised on projectile types.
- Performed peer reviews on acquisitions of Tasers.
- Researched, analyzed, instructed, interpreted, and applied laws contained in the Federal Acquisition Regulation.

**Formal Education:**

**Bachelor of Science- Criminal Justice**
December of 2013
University of Maryland University College
Adelphi, MD

**Associate Degree- Criminal Justice**
December of 2011
Hagerstown Community College
Hagerstown, MD

**Technical or Occupational Certificate- Industrial Technology**
May of 2017
Hagerstown Community College
Hagerstown, MD

**Additional Qualifications:**

**I received training from ATF in the following areas to include, but not limited to:**

- National Firearms Act (NFA) of 1934
- Gun Control Act (GCA) of 1968
- Arms Export Control Act (AECA) of 1976
- Firearms ID and nomenclature
- Ammunition history and development
- Making a firearm (Glock-type)
- Making a silencer
- Privately Made Firearms (PMF)

**I received training from ATF in the following historic firearms designs to include, but not limited to:**

- Gatling Gun
- Maxim Machinegun
- FAL Machinegun
- MG/34 and MG/42 Machinegun
- Glock Pistols and Machinegun Conversion Devices
- STEN Submachinegun
- Uzi Submachinegun
- AR-15 and M16 Machinegun
- AR-180 and AR-18 Machinegun
- AK-47 Machinegun
- Lewis Machinegun
- Browning 1919 Machinegun
- Thompson Submachinegun
- Silencer History, Design and Components
- M2 Carbine Machinegun
- MAC 10/11 Type Machineguns

- FN MK-SCAR
- FN M249 Machinegun
- FN MK46

**I have attended the following firearm armorers' courses:**

- Dr. Philip H. Dater, Silencer Principles Training (1)
- Benelli M1, 2, & 4 Shotgun Series (3)
- Springfield XD & XDM Pistols (2)
- Springfield XDs & Hellcat Pistols (2)
- Smith & Wesson M&P15 (AR-15) (1)
- Smith & Wesson M&P/M2.0 Pistols (1)
- Glock Pistol Armorers Course (1)
- Heckler & Koch MP5 Machinegun (1)
- Heckler & Koch MP5 Machinegun Burst Trigger Group (1)
- Heckler & Koch UMP Machinegun (1)
- Heckler & Koch UMP Machinegun Burst Trigger Group (1)
- Makarov Pistol
- AK-47/AKM Machineguns
- AK-74 Machinegun
- RPK machineguns
- PSL Rifle
- Tantal Machinegun
- Galil Machinegun
- SVD Dragunov Rifle
- Type 86 Rifle
- Al Kadeisah Rifle
- Uzi Submachinegun
- RPD/PKM Series Machinegun
- DPM Machinegun
- SGM Machinegun
- KGK Machinegun
- DShK 38/46-DShKM Machinegun
- NSV Machinegun
- Colt M4/M16 Machinegun

**I received training from ATF in the following machinegun conversions for semiautomatic versions of the following:**

- AR-15 and M16
- AK-type
- Glock
- Steyr Aug
- FN P90S
- Pistols (General)
- M1 and M2 Carbine
- FN FAL
- FNC
- HK-Type

- UZI
- MAC type
- M 11/9-type
- TEC-9
- SKS
- Browning M1919
- M240
- FN SCAR

**I have attended the following instruction courses related to scientific equipment:**

- CartWinPro Forensic Headstamp Database
- Precision Measuring Instruments Certification (Tape and Rule Measurement, Caliper Measurement, Gage Measurement, Angle Measurement, Micrometer Measurement, Dial Gage Measurement and bolt/screw thread measurements)

**I have toured the firearms collections of the following museums:**

- Gettysburg National Military Park Museum & Visitors Center in Gettysburg, PA
- Antietam National Battlefield Park Museum & Visitors Center in Sharpsburg, MD
- Monocacy National Battlefield Park Museum & Visitors Center in Frederick, MD
- Harpers Ferry National Historical Parks Museum & Visitors Center in Harpers Ferry, WV
- ATF National Firearms Collection in Martinsburg, WV.
- Gettysburg Museum of History in Gettysburg, PA
- Little Bighorn Battlefield National Monument in Crow Agency, MT
- National Rifle Association's National Firearms Museum in Fairfax, VA
- United States Secret Service Training Facility and Weapons Lab in Laurel, MD
- Sig Sauer Museum in Epping, NH
- Museum of Connecticut History in Hartford, CT

**I have received manufacturing and historical instruction at the following facilities:**

- Kent Cartridge in Kearneysville, WV
- Charter Arms in Shelton, CT
- O.F Mossberg in North Haven, CT
- Colt Manufacturing Company in West Hartford, CT (twice in 2024)
- Yankee Hill Manufacturing (Silencers) in Easthampton, MA
- Sturm, Ruger & Company in Newport, NH
- Sig Sauer in Newington, NH

**I have attended the following firearm trade shows to view firearms to include the following:**

- Great American Outdoor Show- Harrisburg, PA- 2007, 2008, 2010, 2021 and 2024
- Frederick Gun Show- Frederick, MD
- The Nation's Gun Show- Chantilly, VA
- C & E Gun Show- Harrisburg, PA
- Quarryville Gun Show- Quarryville, PA
- Izaak Walton League Gun Show- Greencastle, PA

**I have instructed members of the Law Enforcement community in the following subjects:**

- STEN Machinegun
- MG/34 and MG/42 Machineguns
- Lewis Machinegun
- AR-18 Machinegun
- AR-180 Semiautomatic rifle
- Firearm Destruction
- Firearm Importation
- National Firearms Act (NFA) Firearms
- Firearms Parts or Accessories
- Firearms Interstate Nexus

**I have completed the following firearms related courses outside of ATF:**

- Maryland Department of Natural Resources Hunters Safety Education Program
- Maryland Firearms Safety Training Course
- Metropolitan Police Department (D.C) Firearms Safety Training Course
- Basic Gun Safety 101
- Introduction to Handgun Safety (Maryland)
- Maryland Handgun Wear and Carry Permit Program

**I am a member of the following shooting clubs:**

- Conococheague Sportsman's Club
- Potomac Fish and Game Club

I began competition shooting at approximately 10 years old. Since then, I regularly participate in stationary target shotgun shooting events at local firearms clubs in the Maryland/West Virginia/Virginia area. I am also a "Trap" and "Sporting Clays" shooter, participating in recreational "Trap" shooting as well as recreational and competitive "Sporting Clays" events. I have been a competitive shooter for approximately 23 years.

**I have testified and been qualified as an Expert witness with respect to firearms and ammunition in the following trials:**

- *Unites States of America v. Jamaul Aziz*, S2 21 Cr. 113 (PMH). June 27, 2024.
- *United States of America v. Victor McMillar,* Case No. 4:23-CR-00090-RSB. October 23, 2024.



# REGIONAL FORENSIC SCIENCE CENTER

1109 N. Minneapolis Street Wichita, KS 67214-3129 • Phone (316) 660-4800 • Fax (316) 383-4535

**Firearms**
**Laboratory Report**

| | | | |
|---|---|---|---|
| **Agency Case #:** | 25C057987 | **Laboratory Case #:** | 25-00590 #3 |
| | 25C063403 | **Report Date:** | August 14, 2025 |
| | 25C056136 | **Reported by:** | Sara M. Rogers, BS |
| **Agency:** | Wichita PD | **Report #:** | 3.0 |
| | 455 North Main Street | **Lab Activity Dates:** | 07/25/2025 to 08/14/2025 |
| | Wichita, KS  67202 | **Subject Name(s):** | Daquinton Baker |
| **Requester(s):** | Reel, Vincent | | |

The report author ensures the validity of the conclusions, opinions, and/or interpretations contained within this report. All results relate only to the items that were tested and apply to the item as it was received, except when otherwise indicated.

## EVIDENCE DESCRIPTION

The following was submitted by Vincent Reel on July 23, 2025:

Container G - Tape-Sealed Box Containing:  Handgun with Magazine  [25C063403]
  Item 1 - Taurus pistol with light/laser
  Item 2 - Magazine
Container H - Tape-Sealed Envelope Containing:  Casings  [25C056136]
  Item 3 - Four fired cartridge cases
Container I - Large Tape-Sealed Envelope Containing:  Casings  [25C056136]
  Item 4 - Nine fired cartridge cases
Container J - Large Tape-Sealed Envelope Containing:  Casings  [25C056136]
  Item 5 - Eight fired cartridge cases
Container K - Tape-Sealed Paper Sack Containing:  ~41 Cartridge Casings (C4-C13, C17-C28, C47-C65) [25C057987]
  Item 6 - Fourty-one fired cartridge cases

## EVIDENCE SUMMARY

Item 1: 9mm Luger caliber Taurus model G3c semiautomatic pistol, serial number ADA845443.
Item 1.1: Test fires from firearm Item 1.
Item 2: Black detachable box magazine.
Item 3:
- (3) Blazer 9mm Luger fired cartridge cases (labeled "3A", "3B", and "3D").
- (1) Hornady 9mm Luger fired cartridge case (labeled "3C").
Item 4:
- (1) Blazer 9mm Luger fired cartridge case (labeled "4A").
- (4) Federal 9mm Luger fired cartridge cases (labeled "4B", "4C", "4G", and "4H").
- (4) AMMO, Inc. 9mm Luger fired cartridge cases (labeled "4D", "4E", "4F", and "4I").

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
SMR    www.sedgwickcounty.org/forensic-science    Page 1 of 3

| Laboratory Report | | |
|---|---|---|
| **Firearms** | **Report Date:** August 14, 2025 | **Laboratory Case #:** 25-00590 #3 |

Item 5:
- (7) Blazer 9mm Luger fired cartridge cases (labeled "5A", "5B", "5C", "5D", "5E", "5F", and "5G").
- (1) Winchester 9mm Luger fired cartridge case (labeled "5H").

Item 6:
- (10) Blazer 9mm Luger fired cartridge cases (labeled "6A", "6B", "6C", "6D", "6F", "6G", "6H", "6I", "6J, and "6AN").
- (1) Blazer 9mm Luger fired cartridge case (labeled "6E").
- (12) Federal 9mm Luger fired cartridge cases (labeled "6K", "6L", "6M", "6N", "6O", "6P", "6Q", "6R", "6S", "6T", "6U", and "6V").
- (1) Fiocchi 9mm Luger fired cartridge case (labeled "6W").
- (16) SIG Sauer 9mm Luger fired cartridge cases (labeled "6X", "6Y", "6Z", "6AA", "6AB", "6AC", "6AD", "6AE", "6AF", "6AG", "6AH", "6AI", "6AJ", "6AK", "6AL", and "6AM").
- (1) Hornady 9mm Luger fired cartridge case (labeled "6AO").

## RESULTS

Firearm Item 1 is functional as received.

## OPINIONS

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 4A, 5(A-G), 6E were identified as having been fired in firearm Item 1.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 3(A-D), 4(B-I), 5H, 6(A-D, F-J, AN) were identified as having been fired in the same firearm.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 6(K-V) were identified as having been fired in the same firearm.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 6(W-AM) were identified as having been fired in the same firearm.

Based on the significant disagreement of class characteristics, fired cartridge case Items 3(A-D), 4(B-I), 5H, 6(A-D, F-J, AN) were eliminated as having been fired in the same firearms as fired cartridge case Items 6(K-AM, AO).

Based on the significant disagreement of individual characteristics, fired cartridge case Items 6(K-V) were eliminated as having been fired in the same firearm as fired cartridge case Items 6(W-AM).

While exhibiting similar class characteristics and some disagreement of individual characteristics, the quality and quantity of disagreement is insufficient for elimination and fired cartridge case Item 6AO was neither eliminated nor identified as having been fired in the same firearms as fired cartridge case Items 6(K-V) and 6(W-AM).

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
SMR                        www.sedgwickcounty.org/forensic-science                        Page 2 of 3

| Laboratory Report | | |
|---|---|---|
| **Firearms** | **Report Date:** August 14, 2025 | **Laboratory Case #:** 25-00590 #3 |

## METHODOLOGY

Function Testing
Macroscopic/Microscopic Evaluation

## REMARKS

Item 1.1 was retained in the laboratory; all remaining items were returned to the submitting agency. Some items may be repackaged.

Scientist: _____

       Sara M. Rogers, BS
       Forensic Scientist

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
SMR       www.sedgwickcounty.org/forensic-science       Page 3 of 3



# REGIONAL FORENSIC SCIENCE CENTER

1109 N. Minneapolis Street Wichita, KS 67214-3129 • Phone (316) 660-4800 • Fax (316) 383-4535

**Firearms**
**Supplemental Report**

| | | | |
|---|---|---|---|
| **Agency Case #:** | 25C057987 | **Laboratory Case #:** | 25-00590 #4 |
| **Agency:** | Wichita PD | **Report Date:** | October 8, 2025 |
| | 455 North Main Street | **Reported by:** | Sara M. Rogers, BS |
| | Wichita, KS  67202 | **Report #:** | 4.0 |
| **Requester(s):** | Reel, Vincent | **Lab Activity Dates:** | 09/19/2025 to 10/01/2025 |
| | Rogers, Richard | **Subject Name(s):** | Daquinton Baker |
| | | | Robert Veales |

The report author ensures the validity of the conclusions, opinions, and/or interpretations contained within this report. All results relate only to the items that were tested and apply to the item as it was received, except when otherwise indicated.

## EVIDENCE DESCRIPTION

The following was submitted by Vincent Reel on September 18, 2025:
Container M - Tape-Sealed Paper Sack Containing:  ~17 Cartridge Casings
Item 7 - Seventeen fired cartridge cases

## EVIDENCE SUMMARY

Item 7:
- (2) Winchester 45 Auto fired cartridge cases (labeled "7A" and "7B").
- (5) Fiocchi 45 Auto fired cartridge cases (labeled "7C", "7D", "7E", "7O", and "7Q").
- (9) Fiocchi 45 Auto fired cartridge cases (labeled "7F", "7G", "7H", "7I", "7J", "7K", "7L", "7M", and "7N").
- (1) Hornady 45 Auto fired cartridge case (labeled "7P").

## OPINIONS

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 7(C-E, O-Q) were identified as having been fired in the same firearm.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 7(F-N) were identified as having been fired in the same firearm.

While exhibiting similar class characteristics and some agreement of individual characteristics, the quality and quantity of agreement is insufficient for an identification and fired cartridge case Items 7A and 7B were neither eliminated nor identified as having been fired in the same firearm.

---

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

USA-00001588

| Supplemental Report | | |
|---|---|---|
| **Firearms** | **Report Date:** October 8, 2025 | **Laboratory Case #:** 25-00590 #4 |

Based on the significant disagreement of class characteristics, fired cartridge case Items 7(A-B) were eliminated as having been fired in the same firearms as fired cartridge case Items 7(C-E, O-Q) and fired cartridge case Items 7(F-N).

Based on the significant disagreement of class characteristics, fired cartridge case Items 7(C-E, O-Q) were eliminated as having been fired in the same firearm as fired cartridge case Items 7(F-N).

**METHODOLOGY**

Macroscopic/Microscopic Evaluation

**REMARKS**

All items were returned to the submitting agency. Some items may be repackaged.

This Laboratory Report is supplemental to the Laboratory Report dated August 14, 2025.

Scientist:

Sara M. Rogers, BS
Forensic Scientist

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
SMR                www.sedgwickcounty.org/forensic-science                Page 2 of 2

USA-00001589



# REGIONAL FORENSIC SCIENCE CENTER

1109 N. Minneapolis Street Wichita, KS 67214-3129 • Phone (316) 660-4800 • Fax (316) 383-4535

**Firearms**
**Supplemental Report**

| | | | |
|---|---|---|---|
| **Agency Case #:** | 25C056136; 25C057987; 25C063403 | **Laboratory Case #:** | 25-00590 #5 |
| | | **Report Date:** | October 20, 2025 |
| **Agency:** | Wichita PD | **Reported by:** | Sara M. Rogers, BS |
| | 455 North Main Street | **Report #:** | 5.0 |
| | Wichita, KS  67202 | **Lab Activity Dates:** | 09/29/2025 to 10/20/2025 |
| **Requester(s):** | Reel, Vincent | **Subject Name(s):** | Daquinton Baker |
| | | | Robert Veales |
| | | | Charles Colbert |

The report author ensures the validity of the conclusions, opinions, and/or interpretations contained within this report. All results relate only to the items that were tested and apply to the item as it was received, except when otherwise indicated.

## EVIDENCE DESCRIPTION

The following was submitted by Vincent Reel on September 24, 2025:

    Container N - Tape-Sealed Gun Box Containing:  Handgun  [25C057987]
      Item 8 - CZ pistol
      Item 9 - Magazine
    Container O - Tape-Sealed Gun Box Containing:  Handgun  [25-22109 / ATF]
      Item 10 - Glock pistol with aftermarket barrel and attached machinegun conversion device
      Item 14 - One fired bullet fragment recovered from trigger guard of Firearm Item 10
    Container P - Tape-Sealed Envelope Containing:  Cartridge Casings (C41-C46)  [25C057987]
      Item 11 - Six fired cartridge cases
    Container Q - Tape-Sealed Envelope Containing:  Cartridge Casing (C2)  [25C057987]
      Item 12 - One fired cartridge case
    Container R - Tape-Sealed Paper Sack Containing:  ~13 Sealed Coin Envelopes Each Containing Casings [25C057987]
      Item 13 - Thirteen fired cartridge cases

The following was re-submitted by Vincent Reel on September 24, 2025:

    Container H - Tape-Sealed Envelope Containing:  Casings  [25C056136]
      Item 3 - Four fired cartridge cases
    Container I - Large Tape-Sealed Envelope Containing:  Casings  [25C056136]
      Item 4 - Nine fired cartridge cases
    Container J - Large Tape-Sealed Envelope Containing:  Casings  [25C056136]
      Item 5 - Eight fired cartridge cases

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

USA-00001613

| | Supplemental Report | |
|---|---|---|
| **Firearms** | **Report Date:** October 20, 2025 | **Laboratory Case #:** 25-00590 #5 |

The following was re-submitted by Vincent Reel on September 29, 2025:

  Container K - Tape-Sealed Paper Sack Containing:  ~41 Cartridge Casings (C4-C13, C17-C28, C47-C65) [25C057987]

    Item 6 - Fourty-one fired cartridge cases

**EVIDENCE SUMMARY**

Item 3:
- (3) Blazer 9mm Luger fired cartridge cases (labeled "3A", "3B", and "3D").
- (1) Hornady 9mm Luger fired cartridge case (labeled "3C").
Item 4:
- (1) Blazer 9mm Luger fired cartridge case (labeled "4A").
- (4) Federal 9mm Luger fired cartridge cases (labeled "4B", "4C", "4G", and "4H").
- (4) AMMO, Inc. 9mm Luger fired cartridge cases (labeled "4D", "4E", "4F", and "4I").
Item 5:
- (7) Blazer 9mm Luger fired cartridge cases (labeled "5A", "5B", "5C", "5D", "5E", "5F", and "5G").
- (1) Winchester 9mm Luger fired cartridge case (labeled "5H").
Item 6:
- (10) Blazer 9mm Luger fired cartridge cases (labeled "6A", "6B", "6C", "6D", "6F", "6G", "6H", "6I", "6J", and "6AN").
- (1) Blazer 9mm Luger fired cartridge case (labeled "6E").
- (12) Federal 9mm Luger fired cartridge cases (labeled "6K", "6L", "6M", "6N", "6O", "6P", "6Q", "6R", "6S", "6T", "6U", and "6V").
- (1) Fiocchi 9mm Luger fired cartridge case (labeled "6W").
- (16) SIG Sauer 9mm Luger fired cartridge cases (labeled "6X", "6Y", "6Z", "6AA", "6AB", "6AC", "6AD", "6AE", "6AF", "6AG", "6AH", "6AI", "6AJ", "6AK", "6AL", and "6AM").
- (1) Hornady 9mm Luger fired cartridge case (labeled "6AO").
Item 8: 9mm Luger caliber CZ model CZ 75 P-07 DUTY semiautomatic pistol, serial number B180415.
Item 8.1: Test fires from firearm Item 8.
Item 9: Black detachable box magazine.
Item 10: 9mm Luger caliber Glock model 19X semiautomatic pistol, **frame bearing serial number CABY510, slide bearing serial number CCLC342**.
Item 10.1: Test fires from firearm Item 10.
Item 10.1.1: Test fired cartridge cases T-10B and T-10E from Glock pistol (Firearm Item 10).
Item 11:
- (4) Remington 40 S&W fired cartridge cases (labeled "11A", "11B", "11C", and "11E").
- (2) Starline 40 S&W fired cartridge cases (labeled "11D" and "11F").
Item 12:
- (1) Winchester 9mm NATO fired cartridge case (labeled "12").
Item 13:
- (10) Blazer 9mm Luger fired cartridge cases (labeled "13A", "13B", "13D", "13E", "13F", "13G", "13I", "13J", "13K", and "13L").
- (2) Blazer 9mm Luger fired cartridge cases (labeled "13C" and "13M").
- (1) High Precision Range 9mm Luger fired cartridge case (labeled "13H").
Item 14:
- (1) copper jacketed fired bullet fragment (labeled "14").

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

USA-00001614

| | Supplemental Report | |
|---|---|---|
| **Firearms** | **Report Date:** October 20, 2025 | **Laboratory Case #:** 25-00590 #5 |

**RESULTS**

Firearm Item 8 is functional as received.

Firearm Item 10 was not functional as received due to damage and a missing trigger. After replacing the frame and slide cover plate with ones from the reference collection, the firearm was able to function and was successfully test fired.

The class characteristics of fired bullet fragment Item 14 were searched in the AFTE General Rifling Characteristics Database and the attached listing of known firearms having similar class characteristics was found. This list does not exclude any firearms that may exist, having similar class characteristics, but currently are not listed.

Due to distortion/damage, the caliber/caliber family of fired bullet fragment Item 14 was unable to be determined.

**OPINIONS**

**9mm Luger cartridge cases:**

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 13(A-B, D-G, I-L) were identified as having been fired in firearm Item 1.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 3(A-D), 4(B-I), 5H, 6(A-D, F-J, AN), and 13(C, M) were identified as having been fired in firearm Item 8.

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 6AO and 13H were identified as having been fired in firearm Item 10.

Based on the significant disagreement of individual characteristics, fired cartridge case Items 6(K-V) and 6(W-AM) were eliminated as having been fired in firearm Item 10.

Based on the significant disagreement of class characteristics, fired cartridge case Item 12 was eliminated as having been fired in firearm Items 1, 8, and 10.

Based on the significant disagreement of class characteristics, fired cartridge case Item 12 was eliminated as having been fired in the same firearms as fired cartridge case Items 6(K-V) and 6(W-AM).

**40 S&W cartridge cases:**

Based on the agreement of discernible class characteristics and sufficient matching individual detail, fired cartridge case Items 11(A-F) were identified as having been fired in the same firearm.

**Bullet:**

Based on the significant disagreement of class characteristics, fired bullet fragment Item 14 was eliminated as having been fired from firearm Items 1, 8, and 10.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

USA-00001615

| Supplemental Report | | |
|---|---|---|
| **Firearms** | **Report Date:** October 20, 2025 | **Laboratory Case #:** 25-00590 #5 |

**METHODOLOGY**

Function Testing
Macroscopic/Microscopic Evaluation

**REMARKS**

Items 1.1, 8.1, and 10.1 were retained in the laboratory; all remaining items were returned to the submitting agency. Some items may be repackaged.

Items 3, 4, 5, and 6 were were previously compared under case record #3, dated August 14, 2025.

Fired cartridge case Items 4A, 5(A-G), and 6E were previously identified to Firearm Item 1. These items were not re-examined under this case record.

Firearm Item 10 is being returned in a disassembled (field stripped) state, due to the damage to the firearm as received.

This Laboratory Report is supplemental to the Laboratory Reports dated August 14, 2025 and October 8, 2025.

Scientist:

Sara M. Rogers, BS
Forensic Scientist

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
SMR    www.sedgwickcounty.org/forensic-science    Page 4 of 4

USA-00001616

**CURRICULUM VITAE**

**NAME**        **Sara Rogers**

**TITLE**:        **Forensic Scientist III, Firearms Examiner/Firearms Technical Leader**

**ADDRESS**:        Sedgwick County Regional Forensic Science Center
1109 N. Minneapolis
Wichita, KS 67214

**TELEPHONE**:        (316) 660-4800

**EDUCATION**:

   **2020**        **B.S. in Forensic Science, summa cum laude**
        University of North Dakota

   **2020**        **B.S. in Criminal Justice, summa cum laude**
        University of North Dakota

**RELEVANT COURSEWORK**:

- Introduction to the Forensic Sciences
- Forensic Science
- Analysis of Forensic Evidence
- Introduction to Criminal Justice
- Criminal Investigation
- Criminal Procedure
- General Chemistry I and II with Laboratory
- Survey of Organic Chemistry with Laboratory
- Analytical Chemistry with Laboratory
- Introductory College Physics I and II with Laboratory
- Fundamentals of Public Speaking

**EXPERIENCE**:

**Nov 2025-Present: Forensic Scientist III – Firearms Examiner/Firearms Technical Leader,** Sedgwick County Regional Forensic Science Center – Firearms Section

**Nov 2023-Nov 2025: Forensic Scientist II – Firearms Examiner/Firearms Technical Leader,** Sedgwick County Regional Forensic Science Center – Firearms Section
- FS I duties
- Comparison casework
- Verifications of comparison casework
- Standard operating procedure and document updates/maintenance
- Training of new examiner

**Mar 2021-Nov 2023:        Forensic Scientist I – Firearms Examiner,** Sedgwick County Regional Forensic Science Center – Firearms Section

- Firearm function test casework
- Firearm barrel/overall length measurements
- Calibration checks/lab maintenance
- Serial number restoration casework
- Technical review of casework

**TRAINING:**

**July 2021:**    Building a Crime Gun Intelligence Capability webinar

**September 2021:**    Modern Firearm Manufacturing Techniques Course by Advanced Firearms Technologies Consulting Group

- Toured several firearms/tool/ammunition manufacturing facilities in the Northeast United States
  - SIG Sauer, Thompson Investment Casting, Kahr Arms, Yankee Hill Machine Co., Smith & Wesson, Savage Arms, Colt, Lyman, Springfield Armory, Drill Masters El Dorado Tool, Wilson Arms, Charter Arms, and Connecticut Shotgun and Standard Mfg.

**November 2021:**    Midwest Firearm 2021 Virtual Training Seminar

- 8 hour webinar covering various topics within the firearms discipline, including 3D comparison microscopy, testifying in a court of law, and studies completed in the field.

**January 2022:**    The Effect of Time on Rusted Firearm Identification webinar

**January 2022:**    2022 Firearm and Toolmarks Policy and Practice Forum

- 4 day webinar consisting of four hours each day covering research, emerging technologies, intelligence, and legal aspects of the firearm and toolmark discipline from many speakers of different backgrounds.

**March 2022:**    Improving Forensic Decision Making: A Human-Cognitive Perspective webinar

**June 2022:**    Blind Testing in Firearms Examination: Preliminary Results, Benefits, Limitations, and Future Directions webinar

**January 2023:**    Glock Armorer's Course

| | |
|---|---|
| **March 2023:** | Subclass Characteristic Workshop |

- 8 hour lecture taught by Nancy McCombs covering history and evolution of subclass characteristics, how to discern subclass characteristics, common manufacturing/machining methods of firearms/tools, and legal challenges regarding subclass characteristics.

| | |
|---|---|
| **April 2023:** | Glock History, Manufacturing, and Evolution webinar |
| **September 2024:** | Machining for the Firearms Examiner Course |

- 2 day class taught by Chris Monturo comprised of lectures and hands-on microscope application covering various machining methods of firearm and ammunition components and tools, various marks left by those methods, how they relate to potential subclass characteristics, how to answer legal challenges regarding subclass, and more. Also covered specialty topics of machining marks and potential subclass on Glock clone and aftermarket parts (slides and barrels) and various unique ammunition products.

| | |
|---|---|
| **July 2025:** | Back to Basics: AFTE Theory of Identification and Likelihood Issues |

- Webinar taught by Ronald Nichols reiterating the AFTE Theory of Identification. Also covered brief historical background of the field of firearms identification, common criticisms of the AFTE Theory of Identification, how to defend the Theory, and likelihood issues surrounding the Theory.

**TESTIMONY:**

| | |
|---|---|
| **February 2024:** | Comparison, Sedgwick County District Court |
| **November 2024:** | Function testing and comparison, Sedgwick County District Court |
| **March 2025:** | Function testing and comparison, Sedgwick County District Court |
| **October 2025:** | Function testing and comparison, Sedgwick County District Court |
| **December 2025:** | Function testing and comparison, Sedgwick County District Court |



# REGIONAL FORENSIC SCIENCE CENTER

1109 N. Minneapolis Street Wichita, KS 67214-3129 • Phone (316) 660-4800 • Fax (316) 383-4535

## Biology/DNA
## Supplemental Report

| | | | |
|---|---|---|---|
| **Agency Case #:** | 25C057987 | **Laboratory Case #:** | 25-00590 |
| **Agency:** | Wichita PD | **Report Date:** | December 2, 2025 |
| | 455 North Main Street | **Reported by:** | Therese M. Gibler, BS |
| | Wichita, KS  67202 | **Record #:** | 6.0 |
| **Requester(s):** | Reel, Vincent | **Lab Activity Dates:** | 11/20/2025 to 11/26/2025 |
| | Rogers, Richard | | |

The report author ensures the validity of the conclusions, opinions, and/or interpretations contained within this report. All results relate only to the items that were tested and apply to the item as it was received, except when otherwise indicated.

## DESCRIPTION OF EVIDENCE

For a description of all of the exhibits previously submitted in this case refer to Lab Report and Offender Hit Notification # 25-00590 issued by this analyst dated 05/21/2025 and 06/04/2025, respectively.

The following evidence was submitted by Detective Reel on 11/20/2025.

Container V    One tape-sealed manila envelope, labeled in part "Buccal swabs collected from Charles Colbert", containing one swab box, labeled in part "Charles Colbert", containing:
   K2     Oral standard from Charles Colbert.

The following evidence was submitted by Detective Reel on 11/24/2025.

Container Y    One tape-sealed brown paper bag, labeled in part "Buccal swabs from Darius Jackson", containing two swab boxes, each labeled in part "Darius Jackson", each containing:
   K3     Oral standard from Darius Jackson.

   The following exhibits underwent DNA analysis:
   K2     Oral standard from Charles Colbert.
   K3     Oral standard from Darius Jackson.

## RESULTS AND INTERPRETATIONS

**DNA extraction** was performed on K2 and K3.

**Polymerase Chain Reaction (PCR)** was performed on K2 and K3 for Short Tandem Repeat (STR) DNA analysis. The isolated DNA was amplified by PCR and profiles from the GlobalFiler™ System were detected by fluorescent imaging for genetic loci D3S1358, vWA, D16S539, CSF1PO, TPOX, D8S1179, D21S11, D18S51, D2S441, D19S433, TH01, FGA, D22S1045, D5S818, D13S317, D7S820, SE33, D10S1248, D1S1656, D12S391, D2S1338, DYS391, Y indel, and Amelogenin.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| | **Supplemental Report** | |
|---|---|---|
| **Biology/DNA** | **Report Date:** December 2, 2025 | **Laboratory Case #:** 25-00590 #6 |

**RESULTS AND INTERPRETATIONS, continued:**

Based on the results of PCR DNA analysis:

*From the Taurus*
1. The DNA profile obtained from the swabs "grips" (Q1) is a mixture of at least three individuals, at least one of which is male. The major contributor to this profile is consistent with the profile of Daquinton Baker (K1); therefore, Daquinton Baker cannot be excluded as the major contributor to this profile. Charles Colbert (K2) and Darius Jackson (K3) are excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

2. The DNA profile obtained from the swabs "trigger, mag, buttons" (Q2) is a mixture of at least five individuals, at least two of which are male. Daquinton Baker (K1) cannot be excluded as a major contributor to this profile. Charles Colbert (K2) is inconclusive as a contributor to this profile as there was not enough information to either exclude or imply any association between this individual and the sample profile. Darius Jackson (K3) is excluded as a contributor to this profile.

*From the vehicle*
3. The DNA profile obtained from the swabs "P" (Q3) is a mixture of at least two individuals, at least one of which is male. The major contributor to this profile is consistent with the profile of an unknown female individual. Daquinton Baker (K1), Charles Colbert (K2), and Darius Jackson (K3) are excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

4. The DNA profile obtained from the swabs "Q" (Q4) is a mixture of at least two individuals. The major contributor to this profile is consistent with the profile of Charles Colbert (K2); therefore, Charles Colbert cannot be excluded as the major contributor to this profile. Daquinton Baker (K1) and Darius Jackson (K3) are excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

   - The probability of selecting an unrelated individual at random who exhibits a profile that is the potential major contributor to the profile obtained from Q4 is approximately 1 in 434 octillion.

5. The DNA profile obtained from the swabs "R" (Q5) is a mixture of at least three individuals. Charles Colbert (K2) cannot be excluded as a major contributor to this profile. Daquinton Baker (K1) and Darius Jackson (K3) are excluded as contributors to this profile.

   - The probability of selecting an unrelated individual at random who exhibits a profile that is a potential major contributor to the profile obtained from Q5 is approximately 1 in 181 billion.

6. The DNA profiles obtained from the swabs "S" (Q6), swabs "K" (Q9), swabs "L" (Q10), swabs "M" (Q11), and swabs "N" (Q12) are consistent with the profile of Charles Colbert (K2); therefore, Charles Colbert cannot be excluded as the source of these profiles. Daquinton Baker (K1) and Darius Jackson (K3) are excluded as the source of these profiles.

   - The probability of selecting an unrelated individual at random who exhibits a matching DNA profile with the profiles from Q6 and Q9–Q12 is approximately 1 in 434 octillion.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
TG                              www.sedgwickcounty.org/forensic-science                              Page 2 of 4

| Supplemental Report | | |
|---|---|---|
| **Biology/DNA** | **Report Date:** December 2, 2025 | **Laboratory Case #:** 25-00590 #6 |

**RESULTS AND INTERPRETATIONS, continued:**

*From the vehicle, continued:*

7.  The DNA profiles obtained from the swabs "T" (Q7) and swabs "U" (Q8) are consistent with the profile of an unknown female individual. Daquinton Baker (K1), Charles Colbert (K2), and Darius Jackson (K3) are excluded as the source of these profiles.

*From the Glock*

8.  The DNA profile obtained from the swabs "Glock" (Q13) is a mixture of at least two individuals. The major contributor to this profile is consistent with the profile of Charles Colbert (K2); therefore, Charles Colbert cannot be excluded as the major contributor to this profile. Daquinton Baker (K1) and Darius Jackson (K3) are excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

    *   The probability of selecting an unrelated individual at random who exhibits a profile that is the potential major contributor to the profile obtained from Q13 is approximately 1 in 434 octillion.

*From the CZ P07*

9.  The DNA profile obtained from the swabs "grips/hammer" (Q14) is a mixture of at least five individuals. Charles Colbert (K2) and Darius Jackson (K3) cannot be excluded as major contributors to this profile. Daquinton Baker (K1) is inconclusive as a contributor to this profile, as there was not enough information to either exclude or imply any association between this individual and the sample profile.

    *   The probability of selecting an unrelated individual at random who exhibits a profile that is a potential major contributor to the profile obtained from Q14 is approximately 1 in 1,850.

10. The DNA profile obtained from the swabs "slide mag trigger" (Q15) is a mixture of at least four individuals, at least two of which are male. Darius Jackson (K3) cannot be excluded as a major contributor to this profile. Daquinton Baker (K1) is inconclusive as a contributor to this profile, as there was not enough information to either exclude or imply any association between this individual and the sample profile. Charles Colbert (K2) is excluded as a contributor to this profile.

    *   The probability of selecting an unrelated individual at random who exhibits a profile that is a potential major contributor to the profile obtained from Q15 is approximately 1 in 17,600.

**REMARKS**

In the event further analysis is required for these or any other items related to this case, please contact the undersigned.

Reference standards should be submitted to the laboratory from any individuals believed to be involved in this case.

Statistical estimates were evaluated for Caucasian, Black, and Hispanic populations separately; the least discriminating value is reported.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| Supplemental Report | | |
|---|---|---|
| **Biology/DNA** | **Report Date:** December 2, 2025 | **Laboratory Case #:** 25-00590 #6 |

**REMARKS, continued:**

The remaining DNA extracts will be transferred to the submitting agency, as will all other evidence and/or packaging submitted in this case.

Scientist: _____

       Therese M. Gibler, BS
       Forensic Scientist

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**



# REGIONAL FORENSIC SCIENCE CENTER

1109 N. Minneapolis Street Wichita, KS 67214-3129 • Phone (316) 660-4800 • Fax (316) 383-4535

**Biology/DNA**
**Laboratory Report**

| | | | |
|---|---|---|---|
| **Agency Case #:** | 25C057987 | **Laboratory Case #:** | 25-00590 |
| **Agency:** | Wichita PD | **Report Date:** | May 21, 2025 |
| | 455 North Main Street | **Reported by:** | Therese M. Gibler, BS |
| | Wichita, KS  67202 | **Record #:** | 1.0 |
| **Requester(s):** | Rogers, Richard | **Lab Activity Dates:** | 04/17/2025 to 05/07/2025 |

The report author ensures the validity of the conclusions, opinions, and/or interpretations contained within this report. All results relate only to the items that were tested and apply to the item as it was received, except when otherwise indicated.

## DESCRIPTION OF EVIDENCE

The following evidence was submitted by Detective Rogers on 04/17/2025.

Container E    One tape-sealed manila envelope, labeled in part "Swabs from firearm", containing two swab boxes.

One tape-sealed swab box, labeled in part "Taurus 9mm" "Grips", containing:
Q1        Swabs "grips".

One tape-sealed swab box, labeled in part "Taurus 9mm" "Trigger, mag, buttons", containing:
Q2        Swabs "trigger, mag, buttons".

The following evidence was submitted by Detective Rogers on 04/11/2025.

Container A    One tape-sealed brown paper bag, labeled in part "Three sealed 6x9 envelopes", containing three envelopes.

One tape-sealed manila envelope, labeled in part "From mouths of bottles in Terrain", containing six swab boxes.

One tape-sealed swab box, labeled in part "P" "Members Mark water bottle", containing:
Q3        Swabs "P".

One tape-sealed swab box, labeled in part "Q" "Dasani 16oz water bottle", containing:
Q4        Swabs "Q".

One tape-sealed swab box, labeled in part "R" "Dasani water bottle", containing:
Q5        Swabs "R".

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| Laboratory Report | | |
|---|---|---|
| **Biology** | **Report Date:** May 21, 2025 | **Laboratory Case #:** 25-00590 #1 |

**DESCRIPTION OF EVIDENCE**

**Container A, continued:**

One tape-sealed swab box, labeled in part "S" "Sprite", containing:
Q6    Swabs "S".

One tape-sealed swab box, labeled in part "T" "Dasani water bottle", containing:
Q7    Swabs "T".

One tape-sealed swab box, labeled in part "U" "Clover Valley water bottle", containing:
Q8    Swabs "U".

One tape-sealed manila envelope, labeled in part "Touch DNA – Terrain", containing six tape-sealed swab boxes, respectively labeled in part "A"–"F", the contents of which were neither inventoried nor examined at this time.

One tape-sealed manila envelope, labeled in part "Touch DNA from Terrain & gun magazine", containing five tape-sealed swab boxes, respectively labeled in part "G"–"J" and "O", the contents of which were neither inventoried nor examined at this time.

Container B    One tape-sealed manila envelope, labeled in part "Four sealed swab boxes containing swabs of suspected blood", containing four swab boxes.

One tape-sealed swab box, labeled in part "K" "Exterior front pass. sidedoor [*sic*]", containing:
Q9    Swabs "K".

One tape-sealed swab box, labeled in part "L" "Front pass. exterior door", containing:
Q10    Swabs "L".

One tape-sealed swab box, labeled in part "M" "Exterior front pass. top doorframe", containing:
Q11    Swabs "M".

One tape-sealed swab box, labeled in part "N" "Exterior front pass. door frame", containing:
Q12    Swabs "N".

Container C    One tape-sealed manila envelope, labeled in part "3 Swab boxes w/ poss DNA samples from a Glock & CZP07", containing three swab boxes.

One tape-sealed swab box, labeled in part "Glock" "Slide grips bullet", containing:
Q13    Swabs "Glock".

One tape-sealed swab box, labeled in part "CZ P07" "Grips/hammer", containing:
Q14    Swabs "grips/hammer".

One tape-sealed swab box, labeled in part "CZ P07" "Slide mag trigger", containing:
Q15    Swabs "slide mag trigger".

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| Laboratory Report | | |
|---|---|---|
| **Biology** | **Report Date:** May 21, 2025 | **Laboratory Case #:** 25-00590 #1 |

**DESCRIPTION OF EVIDENCE, continued:**

Examination was requested for the following by Detective Rogers.

The following evidence was submitted by T. Mishler on 04/15/2025.

Container D      One tape-sealed manila envelope, labeled in part "2 DNA swabs taken from Daquinton Baker",
containing one tape-sealed swab box, labeled in part "Daquinton Baker", containing:
K1      Oral standard from Daquinton Baker.

**RESULTS AND INTERPRETATIONS**

Body Fluid Examination was conducted with a presumptive test for blood and revealed the following:

The swabs "K" (Q9), swabs "L" (Q10), swabs "M" (Q11), swabs "N" (Q12), and swabs "Glock" (Q13) tested positive in the presumptive test for blood, which indicates the possible presence of blood.  The remaining exhibits did not undergo testing for the presence of blood.

       The following exhibits underwent DNA analysis:
       Q1      Swabs "grips".
       Q2      Swabs "trigger, mag, buttons".
       Q3      Swabs "P".
       Q4      Swabs "Q".
       Q5      Swabs "R".
       Q6      Swabs "S".
       Q7      Swabs "T".
       Q8      Swabs "U".
       Q9      Swabs "K".
       Q10    Swabs "L".
       Q11    Swabs "M".
       Q12    Swabs "N".
       Q13    Swabs "Glock".
       Q14    Swabs "grips/hammer".
       Q15    Swabs "slide mag trigger".
       K1      Oral standard from Daquinton Baker.

**DNA extraction** was performed on Q1–Q15 and K1.

**Polymerase Chain Reaction (PCR)** was performed on Q1–Q15 and K1 for Short Tandem Repeat (STR) DNA analysis.  The isolated DNA was amplified by PCR and profiles from the GlobalFiler™ System were detected by fluorescent imaging for genetic loci D3S1358, vWA, D16S539, CSF1PO, TPOX, D8S1179, D21S11, D18S51, D2S441, D19S433, TH01, FGA, D22S1045, D5S818, D13S317, D7S820, SE33, D10S1248, D1S1656, D12S391, D2S1338, DYS391, Y indel, and Amelogenin.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| Laboratory Report | | |
|---|---|---|
| **Biology** | **Report Date:** May 21, 2025 | **Laboratory Case #:** 25-00590 #1 |

**RESULTS AND INTERPRETATIONS, continued:**

Based on the results of PCR DNA analysis:

*From the Taurus*
1. The DNA profile obtained from the swabs "grips" (Q1) is a mixture of at least three individuals, at least one of which is male. The major contributor to this profile is consistent with the profile of Daquinton Baker (K1); therefore, Daquinton Baker cannot be excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

   - The probability of selecting an unrelated individual at random who exhibits a profile that is the potential major contributor to the profile obtained from Q1 is approximately 1 in 153 nonillion.

2. The DNA profile obtained from the swabs "trigger, mag, buttons" (Q2) is a mixture of at least five individuals, at least two of which are male. Daquinton Baker (K1) cannot be excluded as a major contributor to this profile.

   - The probability of selecting an unrelated individual at random who exhibits a profile that is a potential major contributor to the profile obtained from Q2 is approximately 1 in 13,100.

*From the vehicle*
3. The DNA profile obtained from the swabs "P" (Q3) is a mixture of at least two individuals, at least one of which is male. The major contributor to this profile is consistent with the profile of an unknown female indvidual. Daquinton Baker (K1) is excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

4. The DNA profile obtained from the swabs "Q" (Q4) is a mixture of at least two individuals. The major contributor to this profile is consistent with the profile of an unknown male indvidual. Daquinton Baker (K1) is excluded as the major contributor to this profile. Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

5. The DNA profile obtained from the swabs "R" (Q5) is a mixture of at least three individuals, at least one of which is male. Daquinton Baker (K1) is excluded as a contributor to this profile.

6. The DNA profiles obtained from the swabs "S" (Q6), swabs "K" (Q9), swabs "L" (Q10), swabs "M" (Q11), and swabs "N" (Q12) are consistent with the profile of an unknown male individual. Daquinton Baker (K1) is excluded as the source of these profiles.

7. The DNA profiles obtained from the swabs "T" (Q7) and swabs "U" (Q8) are consistent with the profile of an unknown female individual. Daquinton Baker (K1) is excluded as the source of these profiles.

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**

| **Laboratory Report** | | |
|---|---|---|
| **Biology** | **Report Date:** May 21, 2025 | **Laboratory Case #:** 25-00590 #1 |

**RESULTS AND INTERPRETATIONS, continued:**

*From the Glock*

8.  The DNA profile obtained from the swabs "Glock" (Q13) is a mixture of at least two individuals.  The major contributor to this profile is consistent with the profile of an unknown male indvidual.  Daquinton Baker (K1) is excluded as the major contributor to this profile.  Minor contributions to this profile are partial in nature and were determined to be of no comparative value.

*From the CZ P07*

9.  The DNA profile obtained from the swabs "grips/hammer" (Q14) is a mixture of at least five individuals, at least two of which are male.  Daquinton Baker (K1) is inconclusive as a contributor to this profile, as there was not enough information to either exclude or imply any association between this individual and the sample profile.

10. The DNA profile obtained from the swabs "slide mag trigger" (Q15) is a mixture of at least four individuals, at least two of which are male.  Daquinton Baker (K1) is inconclusive as a contributor to this profile, as there was not enough information to either exclude or imply any association between this individual and the sample profile.

**REMARKS**

In the event further analysis is required for these or any other items related to this case, please contact the undersigned.

Reference standards should be submitted to the laboratory from any individuals believed to be involved in this case.

Statistical estimates were evaluated for Caucasian, Black, and Hispanic populations separately; the least discriminating value is reported.

Exhibits Q1–Q9 and Q12–Q15 were extracted in full.  The remaining DNA extracts will be transferred to the submitting agency, as will all other evidence and/or packaging submitted in this case.

Data obtained from Q1, Q13, and Q14 will be entered and maintained within the Combined DNA Index System (CODIS).  Depending on profile eligibility, data may be searched against local, state, and national databases. Profiles entered into CODIS are developed in accordance with the provisions of the DNA Identification Act and in compliance with NDIS DNA data acceptance standards.  Should subsequent searches against these databases result in investigative leads, the submitting agency will be notified by the Biology/DNA section.

Scientist:  _____
Therese M. Gibler, BS
Forensic Scientist

*This report shall not be reproduced except in full, without the written approval of the Regional Forensic Science Center.*
**An ANAB 17025:2017 Forensic Science Testing Accredited Laboratory**
TG                                     www.sedgwickcounty.org/forensic-science                                     Page 5 of 5

*Professional Vitae of Therese Gibler*

Sedgwick County Regional Forensic Science Center
1109 N Minneapolis
Wichita, KS 67214
(316)-660-4800

## Education
Missouri State University, Springfield, MO           B.S., Biology, Honors College    1995-1998

Course work at Wichita State University (Wichita, KS) in spring 2013 and at St. Louis University and Fontbonne College (both St. Louis, Missouri) from 1993-1995.

## Relevant Coursework
Biochemistry, Principles of Genetics, Experimental Molecular Biology, Biometry (Population Statistics), Chemistry (I, II) and Organic Chemistry (I, II), Microbiology, Biology (I, II), Physiology.

## Professional Work Experience
Forensic Scientist III
Sedgwick County Regional Forensic Science Center (July 2012 – present)
Casework in serological analysis and DNA analysis including DNA extraction, quantification using RT-PCR, STR-PCR multiplex amplification, capillary electrophoresis, interpretation of single-source/mixture profiles, and statistical evaluation.  Provide technical peer review, consultation with submitting agencies, and expert testimony.  Participate in proficiency testing, laboratory QC, and validation studies.

Laboratory Manager/ Research Assistant
Washington University Medical School, St. Louis, Missouri (March 2000-April 2006)
Performed PCR analysis of patient fluid/tissue samples to determine infections.  Managed protocols, training, purchasing, and lab safety of biomedical laboratory.  Performed complex microbiology and molecular biology research projects including use of viral delivery systems and transgenic mice to determine gene function.

Insectary Research Technician
Today's Staffing for Monsanto, St. Louis, Missouri (March 1999-October 1999)
Prepared and analyzed insect bioassays, including high-throughput screens, of protein, plant, and marine microbe samples.  Received and managed insect eggs, performed insect dissections, and maintained insect colonies.

## Court Experience
I have provided expert witness testimony in the area of Forensic Biology/DNA analysis. Testimony has been provided to the Kansas 18th District (Sedgwick County) and 27th District (Reno County) courts.  Listed here is a general overview of testimony frequency:  04/2015, 12/2016, 02/2017, 11/2017, 04/2018, 09/2018, 10/2018(2), 01/2020, 04/2021, 05/2021, 06/2021, 08/2021, 09/2021(3), 10/2021, 12/2021, 08/2022, 09/2022, 11/2022(2), 01/2023, 01/2023(2 for 27th District), 03/2023, 6/2023, 7/2023, 8/2023, 9/2023, 11/2023, 5/2024, 9/2024, 11/2024, 1/2025(2), 2/2025, 3/2025, 6/2025, 8/2025.

## Relevant Workshops and Training

11th Annual Workshop on STRmix Implementation and Casework Approach, California Department of Justice and San Diego Police Department, Virtual, June 25-26, 2025 (1.25 hours).

Mid-America 2025 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 1-2, 2025 (11.5 hours).

10th Annual Workshop on STRmix Implementation and Casework Approach, California Department of Justice and San Diego Police Department, Virtual, June 11-12, 2024 (9 hours).

34th International Symposium on Human Identification, Promega Corporation, Denver, CO, September 18-21, 2023 (13 hours).

9th Annual Workshop on STRmix Implementation and Casework Approach, California Department of Justice and San Diego Police Department, Virtual, June 27-28, 2023 (9 hours).

8th Annual Workshop on STRmix Implementation and Casework Approach, California Department of Justice and San Diego Police Department, Virtual, June 28-29, 2022 (9 hours).

27th National CODIS Conference, Virtual, November 16-18, 2021 (13 hrs).

26th National CODIS Conference, Virtual, December 8-10, 2020 (18.5 hrs).

31st International Symposium on Human Identification, Promega Corporation, Virtual, September 14-17, 2020 (12.5 hours).

Mid-America 2019 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 16-17, 2019 (10.5 hours).

Mid-America 2018 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 17-18, 2018 (8 hours).

Mid-America 2017 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 25-26, 2017 (11 hours).

STRmix Training Workshop by Buckleton, Wivell and McCarthy, Kansas Bureau of Investigation, Topeka, KS April 10-13, 2017 (25 hours).

AB 3500 Genetic Analyzer Training, Joshua Abernathy Field Applications Specialist for ThermoFisher Scientific, Sedgwick County Regional Forensic Science Center, September 12, 2016 (6 hours).

Mid-America 2016 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 13-14, 2016 (9 hours).

Familial Searching Workshop by Rock Harmon and Brian Harmon (CA DOJ), Howard Johnson Inn, Columbia, MO, April 12, 2016 (8 hours).

## Relevant Workshops and Training, continued:

Quantifiler Trio, Globalfiler, and GeneMapper ID-X Demo and Training, Life Technologies, Sedgwick County Regional Forensic Science Center, Wichita, KS, May 27-28, 2015 (10 hours).

Mid-America 2015 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 8-9, 2015 (seminar 12 hours).

PowerQuant and GeneMapper ID-X Demo and Training, Promega Corporation, Sedgwick County Regional Forensic Science Center, Wichita, KS, March 9, 2015 (8.5 hours).

NIST DNA Analyst Webinar Series:  Probabilistic Genotyping & Software (Part 2), remote access from Wichita, Kansas, September 18, 2014 (3 hours).

NIST DNA Analyst Webinar Series:  Validation Concepts and Resources (Part 1), remote access from Wichita, Kansas, 08/06/2014 (4 hours).

Mid-America 2014 Forensic DNA Conference, Paternity Testing Corporation, Columbia, MO, April 9-10, 2014 (seminar 8 hours).

NIST DNA Mixture Interpretation Workshop & Webcast, remote access from Wichita, Kansas, 04/12/13 (8 hours).

Sexual Assault Response Team Course, Kansas Coalition Against Sexual and Domestic Violence SANE/SART Program, Wichita, Kansas, April, 29-May, 3, 2013 (~36 hours).

Mid-America 2013 Forensic DNA Conference and 6-Dye Evolution:  Prepare Your Lab for the Future of CE Fragment Analysis and beyond Workshop, Paternity Testing Corporation, Columbia, MO, April 8-11, 2013 (seminar 7 hours; workshop 8 hours).

## Publications

Michael S. Conners, **Terri S. Gibler**, Russell N. Van Gelder   *Diagnosis of Microsporidia Keratitis by Polymerase Chain Reaction.*  Arch Ophthalmol**,** Feb 2004; 122: 283 - 284.

Dworkin L, **Gibler TM**, Van Gelder RN.  *Real-time quantitative polymerase chain reaction diagnosis of infectious posterior uveitis.*  Arch. Ophthalmol. 2002, 120:1534-1539.

Van Gelder RN, **Schmitz TM**, Tu D, Embry K, Selby C, Thompson C, Sancar A.  *Pleitropic effects of cryptochromes-1 and -2 on free-running and light-entrained murine circadian rhythms.*  J. Neurogenet. Jan 2002, Vol. 16, No. 3, Pages 181-203: 181-203.

H Dabil, ML Boley, **TM Schmitz**, and RN Van Gelder.  *Validation of a diagnostic multiplex polymerase chain reaction assay for infectious posterior uveitis.*  Arch Ophthalmol.  119:  1315-1322, 2001.

Christopher P. Selby, Carol Thompson, **Therese M. Schmitz**, Russell N. Van Gelder, and Aziz Sancar.  *Functional redundancy of cryptochromes and classical photoreceptors for nonvisual ocular photoreception in mice.*  Proc. Natl. Acad. Sci USA 97:  14697-14702, 2000.

# Therese Gibler

1109 N. Minneapolis | Wichita, KS 67214 | Phone: (316)660-4800
Email: therese.gibler@sedgwick.gov

**COURT TESTIMONY LOG**

| Year | Date | Lab # | Court | Prosecutor |
|---|---|---|---|---|
| 2021 | 04/07/2021 | 19-01629 | District | Shannon Wilson |
| | 05/20-21/2021 | 19-02224 | District | Alice Osburn |
| | 06/21/2021 | 19-01510 | District | Josh Steward |
| | 08/25/2021 | 18-01980 | District | Monica Hoyt |
| | 09/01/2021 | 19-01478 | District | Staci Lane/Shannon Wilson |
| | 09/14/2021 | 19-02178 | District | Shannon Wilson |
| | 09/14/2021 | 18-01442 | District | Alice Osburn |
| | 10/05/2021 | 20-01475 | District | Mark Chotimongkol |
| | 12/16/2021 | 19-00780 | District | Shannon Wilson |
| 2022 | 08/03/2022 | 19-02089 | District | Marc Bennett |
| | 09/21/2022 | 20-01957 | District | Marc Bennett |
| | 11/02/2022 | 20-00358 | District | Josh Steward |
| | 11/03/2022 | 22-00667 | District | Mike Phillips/Jason Roach |
| 2023 | 01/11/2023 | 21-01936 | District | Aaron Breitenbach/Mandee Schauf |
| | 01/26/2023 | 21-01537 | District | Thomas Stanton |
| | 01/26/2023 | 21-01562 | District | Thomas Stanton |
| | 03/16/2023 | 21-01107 | District | Alice Osburn |
| | 06/23/2023 | 23-00675 | District | Justin Edwards/Mandee Schauff |
| | 07/26/2023 | 20-00874 | District | Justin Edwards |
| | 08/02/2023 | 15-02199 | District | Alice Osburn |
| | 09/06-07/2023 | 20-01180 | District | Alice Osburn/Atticus Disney |
| | 11/28/2023 | 20-01740 | District | Josh Steward |
| 2024 | 05/01/2024 | 21-02184 | District | Staci Lane/Moriah Plowden |
| | 09/18/2024 | 22-00667 | District | Mike Phillips/Mandi Schauf |
| | 11/01/2024 | 24-01211 | District | Monica Hoyt/Staci Lane |
| 2025 | 01/07/2025 | 23-00588 | District | Josh Steward/Moriah Plowden |
| | 01/07/2025 | 18-01442 | District | Alice Osburn |
| | 02/13/2025 | 21-01200 | District | Monica Hoyt/Robert Short II |
| | 03/03/2025 | 24-00294 | District | Alice Osburn/Mandee Schauf |
| | 06/09/2025 | 23-01914 | District | Monica Hoyt |
| | 08/12/2025 | 24-00717 | District | Justin Edwards |